FRENCH, ADM'R., v. TRUSTEES OF GRISWOLD COLLEGE ET AL.

1. **Charitable Trust:** SALE OF TRUST ESTATE FOR ADVANCES MADE BY TRUSTEE. Plaintiff's intestate was the bishop of the Protestant Episcopal Church for the diocese of Iowa. The church was not an incorporated body. The defendant, the trustees of Griswold College, was a corporation, organized and acting under the auspices of the church, and owning real estate at the city of Davenport, which it could dispose of only with the consent of the church convention and the bishop. The bishop conceived the plan of erecting a church on a portion of said real estate, to be known as the "bishop's church," with funds which he hoped to collect by voluntary contributions from persons outside of his diocese. The trustees of the college and the convention of the diocese consented, and set apart the land for the building, but neither the trustees nor the convention assumed any pecuniary or other obligations in the premises. The whole management and responsibility of the enterprise was left with the bishop, who proceeded to erect the church, at a cost of $70,000, $60,000 of which he obtained by contribution, and the

other $10,000 of which he contributed from his own funds, with no intention of creating a lien on the building, but hoping to be made whole by future contributions. But this amount has never been repaid him, and his administrator brings this action against the trustees of the college and the bishop's successor in office, who holds the church property under a deed of trust from the college, for the purpose of having the said $10,000 declared a lien on the church property, and the property sold for the satisfaction thereof. *Held* that whatever right the trustee of a secular trust may have to a lien upon the trust estate for advances made by him, where there is a beneficiary who in equity ought to reimburse the trustee, the plaintiff in this case ought not to recover; this being a case of a charitable or religious trust, with no beneficiary known to the law, and it appearing that to allow a recovery would be to put an end to the trust estate and to the trust itself, and to defeat the whole object thereof, as contemplated by the bishop himself, and by those who contributed their funds for the erection of the church.

2. ———: ———: MECHANIC'S LIENS: SUBROGATION. In such case it can make no difference that the bishop made advances to pay off claims which would have been enforced as mechanic's liens against the building. His estate cannot be allowed to assert, by subrogation, rights which he himself never claimed, and the enforcement of which would defeat the whole object of the trust.

### Appeal from Scott District Court.

### THURSDAY, MARCH 22.

ACTION IN EQUITY. The relief asked is that it be established by a decree of the court that Henry W. Lee was a trustee in respect to certain real estate described in the petition, and a building erected thereon, and that his estate is entitled to be reimbursed out of the trust property the amount of advances made by him in excess of the receipts, and that the same be established as a first lien upon the real estate, and the same sold under the decree of the court, in default of the amount found due being otherwise paid. The District Court found the plaintiff was entitled to a lien on the building, but not on the real estate, and entered a decree accordingly. The defendants appeal.

*Putnam & Rogers*, for appellants.

*Cook & Dodge* and *Thompson & French*, for appellee.

SEEVERS, J.—Henry W. Lee died in 1874, and the plaintiff was appointed and duly qualified as administrator of his estate. "From 1855 until his death, Henry W. Lee was the Bishop of the Protestant Episcopal Church in the diocese of Iowa," and the defendant, William Stevens Perry, is the successor of said Lee as bishop. The diocese is an ecclesiastical body, consisting of parishes or congregations of the Protestant Episcopal Church in Iowa, associated for ecclesiastical purposes and government according to the canons of the church. It is not incorporated, nor is it a legal entity. An annual diocesan convention of delegates from the parishes is held, over which the bishop presides. But this body is not incorporated. The defendant, "The trustees of Griswold College," is a corporation located at Davenport, and was organized under the auspices of the Protestant Episcopal Church in Iowa, and is closely connected therewith. In 1866 said corporation owned certain real estate in Davenport, which by the provisions of its articles of incorporation could not be sold without "the consent of the convention of the Protestant Episcopal Church in the diocese of Iowa, and also of the bishop of said diocese."

About 1866, Bishop Lee formed the plan of erecting a church edifice upon the college grounds, to be called the "bishop's church." The trustees of the college "voted to give sufficient land on the college grounds for a bishop's church, if it should be desired, provided the remaining conditions of the articles of incorporation should be complied with as to the consent of the bishop and convention." This action of the trustees was reported to the convention, and the proposed gift was assented to, "with the condition that said land shall be held by the bishop and his successors in trust, for the purpose aforesaid." Afterwards the trustees adopted resolutions reciting the previous action, and that the land had been designated. The location was approved, the land sufficiently described, and the trustees determined it should be "leased to H. W. Lee, the bishop of the Protestant Epicopal

Church in Iowa, and his successors in office, for the term of twenty years, renewable for a like term or terms at the option of the bishop for the purpose of a bishops' church;" upon the condition "as a consideration that the sum of $20,000 or more shall be expended by said bishop in the erection of a place of public worship, under the control and direction of the bishop aforesaid. That in case the church aforesaid should ceased to be used as a bishop's church, it shall come under the full care and control of the board." We are unable to find that any such lease was executed. Bishop Lee, soon after the foregoing action of the trustees, commenced the erection of a building for a church on the designated land. He expected and relied on obtaining, the necessary funds for the erection of the building by voluntary contributions, largely from personal friends residing in states other than Iowa. The work of construction proceeded during the six years following. The bishop had entire charge of the enterprise, and the money was obtained largely, indeed, we think, entirely, through the zeal and efforts of Bishop Lee. Delays occurred for want of funds, and money was borrowed by the bishop on his individual credit, in anticipation of contributions, and applied to the purpose of constructing the building. The amount expended was about $70,000. The amount received by the bishop for the purposes of the case was about $60,000. He, therefore, advanced or paid out of his private funds, say, $10,000, for the erection of the building and the purposes of the trust. This statement is based upon a stipulation in which it is conceded the bishop paid out more than he received, and it was agreed, if it was held the plaintiff was entitled to recover, the amount so expended should be hereafter ascertained.

In making the advances, the bishop, undoubtedly, expected to be repaid from contributions he expected to receive. We do not think he intended to give so largely from his individual means. But the bishop knew the convention, diocese, or church in Iowa did not have any funds which could be

applied to the purpose of the trust or his reimbursement. There is evidence tending to show the advances were made in good faith for the more speedy attainment of the object intended. It cannot be said money was injudiciously expended, unless, possibly, a more costly edifice was erected than the means at the command of the bishop, or in expectancy, justified. But this was left entirely to the discretion of the bishop, and, as he proceeded in the utmost good faith, we are not prepared to say the defendants can justly complain.

From time to time Bishop Lee made statements to the annual conventions in relation to the progress of the work of construction, but no material action was taken in reference thereto until 1873, when it was reported to the convention the building was completed, whereupon that body recommended "that said church be consecrated as a cathedral, if such recommendation meet the wishes of the bishop and the principal donors." At this time Bishop Lee stated to the convention that "in due time a detailed report of receipts and expeditures will be made, but such report will be premature at present. There is no incumbrance on the property." There is a cannon of the church which forbids the consecration of any church edifice "until the building and ground upon which it is erected have been fully paid for and freed from lien or other incumbrance, and, also, that such building and grounds are secured by the terms of the devise, or deed, or subscription by which they are given, from danger of alienation from those who profess and practice the doctrine, discipline and worship of the Protestant Episcopal Church in the United States of America." The building was duly consecrated by Bishop Lee. After his death the plaintiff from time to time presented to the annual diocesan conventions the subject of reimbursing the estate for the amount expended over the amount received. Certain resolutions were adopted, recommending that a committee be appointed to "solicit subscriptions and take any other proper steps to raise a fund to reimburse the estate of the late Bishop,

\* 	\* 	\* 	this convention disclaiming any liability on the part of the diocese, or this convention, or the cathedral, for said sum or any part thereof." Bishop Perry wrote a circular letter tending to the accomplishment of the same end. Nothing, however, was realized, and the scheme has been abandoned. Bishop Lee's estate is insolvent, and in 1877 the annual convention of the diocese, at the request of the trustees of the college, instructed them to convey the real estate designated for, and upon which the building was erected, to the "Right Rev. William Stevens Perry, Bishop of the Protestant Episcopal Church in the diocese of Iowa," and to his successors in said office 	\* 	\* 	\* 	in trust "to take, hold and maintain the same for the use and benefit of the said Protestant Episcopal Church in the diocese of Iowa, for cathedral purposes; upon the further trust, to grant, bargain and convey the same unto such person or corporation as shall be appointed by the convention of said church to take and hold the title to the said premises aforesaid, and upon the further trust unto him, the said bishop, his successors and assigns to reconvey the said lands and premises unto the said parties of the first part (the trustees of Griswold College), and their successors, whenever the same shall, for any reason, cease to be used for cathedral purposes, by or for the said Protestant Episcopal Church in the diocese of Iowa." We are satisfied Bishop Lee did not contemplate or believe he had a lien for money advanced by him either on the building or real estate. If such a lien exists, he was ignorant of his rights in this respect.

I. Counsel for the plaintiff claim "that Bishop Lee was a trustee in the work of erecting the cathedral, and the plan for the erection of the same was by voluntary subscription, which was known to all concerned." We do not understand the foregoing proposition to be controverted. Based thereon is plaintiff's first legal proposition as follows: "That Bishop Lee, having made advances within the purview of the trust in the creation

1. CHARITA-
BLE trust;
sale of trust
estate for ad-
vances made
by trustee.

of the trust property, is entitled to a lien upon the *corpus* or trust estate itself, and that the same can be sold if necessary, to repay him." On the other hand, we understand counsel for the appellant to maintain "that the so called trustee's lien, as recognized and applied in the decisions, amounts to no more than the right of a trustee to be reimbursed his necessary and proper expenses or advances for the benefit of the trust, out of the income of the estate, or proceeds of a sale thereof pursuant to the trust in his hands or coming to him, and to be allowed credit accordingly in his accounting, and the further right, where there is a *cestui que* trust whose equitable duty it is to indemnify or reimburse the trustee for such expenses, to retain the title and possession of the trust estate as against such beneficiary, until repayment. That the lien confers no right of foreclosure and the sale of the body of the trust estate, as in the case of a mortgage, especially when this would destroy the trust."

In support of their respective theories, counsel have cited a large number of authorities, and have largely considered the whole doctrine of trusts as innumerated in the books, so far as the same relates to the lien of trustees and its enforcement. The decisions cited have been carefully examined, and we believe it can be safely asserted they, with a single exception, relate to trusts of a business as distinguished from those of a charitable or religous character. We do not deem it essential to determine whether or not the lien of a trustee for advances made for the benefit of the trust can be enforced by a sale of the trust estate, when the trust is of a business character. Conceding it may be done, and the trust destroyed, and the property devoted to other purposes, this is but an incident which attaches to all enterprises of a business character. The property is not destroyed, but merely enters into other channels of business than was contemplated when the trust was formed. The destruction of a charitable or religious trust by a sale, such as is asked in the case at bar, is not an incident which usually attaches to such a trust.

Ordinarily, it cannot be said the donor or founder of the trust contemplated such a result. But we do not feel called upon to determine whether there is a substantial distinction between the two kinds of trusts mentioned in so far as relates to the enforcement of a trustees' lien. We, however, incline to think there may be.

We can readily conceive when a trustee makes advances for a trust estate, and there is a beneficiary known to the law, that equity might well require such beneficiary to reimburse the trustee. We shall not stop to inquire when or how this may be done, because in the case before the court there is no such person. The members' of the church or diocese, or, at least, many of them, had knowledge of what the bishop did, but no pecuniary obligation was incurred by them. The diocese has no funds which can be legally devoted to the purpose of reimbursing the bishop's estate, and no action can be maintained against it.

II. But counsel for the plaintiff maintain "that a charitable trust estate is as much liable for expenses properly incurred in its creation, or to relieve it from incumbrance, as a pecuniary trust estate, and that the corpus can be sold to pay such expenses; that it is as legitimate to put an end to a charitable trust by a sale to pay just claims, as it is to put an end to a pecuniary trust by a sale." Without stating the appellant's proposition at length, it is sufficient to say the foregoing position is controverted—the claim being the lien never has been enforced against a charitable trust by a sale of the property at the instance of the trustee, unless such power has been expressly confirmed.

THE SAME.

The authorities cited by counsel for appellant relate to trusts of a business character. It is true they were not distinguished from charitable trusts, because the cases did not require it. The language of the decisions is general and applicable to all trusts, but we think it should be confined to the character of the trust under consideration.

The trust in question is peculiar, and we are informed by

counsel none like it is to be found in the books. But counsel for the appellant have cited *Darke v. Williamson*, 25 Beavan, 622, which is claimed in principle to be identical with the case at bar.

In that case the question was whether the plaintiff "was entitled to a lien upon a Baptist chapel at Exeter, on account of expenses incurred by her testator in the execution of the trust. In 1725 the chapel was established, and in 1822 it was rebuilt, and the management of the matter was intrusted to the chapel wardens, one of whom was Mr. Darke, the testator of the plaintiff. For this purpose they borrowed money from Ann Smith, and they deposited with her the title deeds of the chapel. They also made themselves personally liable to her for the repayment of the amount thus borrowed. Subsequently to this, payment of the debt was enforced against the estate of Mr. Darke, and the plaintiff, his representative, now insists that she is entitled to a lien on the chapel to be repaid the amount." The court said: "In support of the plaintiff's case, I have been referred to many authorities laying down this proposition, that a trustee is entitled to be repaid any expenses properly incurred in the execution of the trust. Of the correctness of this proposition there can be no doubt; but the question is whether a trustee can, for that purpose, destroy all the trusts," and the relief asked was refused, although it was held the plaintiff was entitled to the custody of the title deeds, which in England, as we understand, ordinarily amounts to an equitable mortgage.

Counsel for plaintiff have attempted to distinguish this case from the one before the court, but we think they have failed in this respect. They further insist there have been cases subsequently decided in England which in substance have overruled it. Such cases have been examined, and we find they relate to trusts of a business character, and conceding the rule there announced conflicts with the foregoing decision, as applied to the facts before the court, still we think the foregoing decision must be regarded as an authority in a

case where the rights of a trustee of a charitable trust are involved.

III. This trust was originated by Bishop Lee, with the purest and best of motives, for the attainment of an object he much desired. Through his personal solicitations, or because of the knowledge the donors had
THE SAME.
of the bishop, the funds were obtained. It was not his purpose in creating the trust to cast a burden on his people in Iowa, but he expected to obtain the necessary funds from friends who were non-residents of the State. In this, unfortunately, he was mistaken. Had he lived, it is probable the amount advanced by him would in some manner have been paid. The bishop had full charge of everything connected with the trust and its execution. He was subject to no control whatever. He determined the size of the building and the manner it should be constructed. All contracts were made by him or under his direction. The advances were made in good faith for the more speedy accomplishment of the trust, and that was the erection of an edifice for public worship. The advances, however, were purely voluntary. There was no obligation imposed on the bishop to make them. Delays occured for want of funds. The work of construction occupied six years, and it is not certain if further delay had occured the object of the trust would have been defeated. But the bishop undoubtedly acted as he thought for the best in making the advances. But he relied exclusively on future contributions for his reimbursement. The advances were not intended as gifts, but the bishop expected to be repaid in the manner just stated. He did not believe he had a lien on the trust property for the amount advanced by him. If a lien was to be implied he was ignorant of such rule.

It cannot be presumed that the bishop would violate a canon of the church and consecrate a building which was not paid for. He declared it was free from encumbrance. In making this declaration there was no mental reservation He meant that the building was paid for by contributions, and

advances made by him. Bishop Lee acted, without doubt, in good faith, and meant to be understood there was no lien or charge against the property about to be consecrated for public worship.

Now, it seems to us, the right of a trustee to a lien on the trust property must be based on an implied contract, obligation, or understanding, and that no such implication should be indulged in this case because of the character of the trust, and for the further reason such a thing never was contemplated by Bishop Lee.

The decree of the District Court establishes a lien on the building, to satisfy which the same may be sold. This implies it may be torn down and removed. No such result was contemplated by Bishop Lee, and it would be doing him great injustice for a moment to suppose, if living, he would sanction such a proceeding. The decree of the District Court, if carried out, can have but one result, and that is the total destruction of the trust, which it was the object of Bishop Lee to preserve and protect. We think the District Court erred in implying and enforcing the lien under the circumstances.

We have no power to enforce the moral obligation, if such there be, resting on those who enjoy the benefits of the advances made by Bishop Lee. With such question we have nothing to do, and in justice should state that it is only for the purposes of the case conceded that advances were made. It is not conceded as a fact, and such question has not been considered by us, because unnecessary.

IV. It is claimed by counsel for the plaintiff that Bishop Lee made advances to pay claims of mechanics which, if not 2. ——: ——: paid, could have been enforced as liens against mechanic's lien : subro- the building. It is altogether probable that such gation. claims were paid by the bishop, but whether they would have been enforced as liens we have no means of knowing. But such a result must be conceded to have been probable.

To prevent such liens, and the anticipated result, may have been the reason for the advances. But conceding all that is claimed in this respect, we do not think the estate can be subrogated to a right never claimed by Bishop Lee, and which he never intended to enforce, so as to destroy the trust, and thereby cause the property to be devoted to purposes never contemplated by the donors or the bishop.

It seems to us that it is immaterial what claims were paid, and the plaintiff must recover, if at all, because of the right to assert and enforce a trustee's lien. The decree of the District Court must be reversed and the petition dismissed.

REVERSED.