H. W. HORTON, APPELLEE, V. TABITHA HOME ET AL., APPELLANTS.

FILED MARCH 13, 1914.   No. 17,438.

1. **Mechanics' Liens: CHARITABLE INSTITUTIONS.** . A trust for the benefit of the public attaches to property secured by a corporation organized for charitable and religious purposes, to furnish a home for the aged and infirm, and a home for indigent orphans

to be given a common school education to fit them to become nurses and attendants on orphan homes, and similar institutions, and property so secured and used is not subject to mechanics' liens without an order of the district court of the proper county authorizing the same, nor can the property of such a corporation be sold on execution where such sale would defeat the trust and destroy the public purpose for which the property was donated or secured.

2. ———: ———: CONTRACTS BY TRUSTEES. The trustees elected to manage the affairs of such a corporation cannot enter into a valid contract by which its property may become subject to mechanics' liens without first having obtained an order of the district court for that purpose.

3. Charities: TRUSTEES: NOTICE. All persons dealing with the trustees of such a corporation must, at their peril, take notice of the powers granted by its articles of incorporation.

4. Mechanics' Liens: CHARITABLE INSTITUTIONS. The failure of the trustees to object to the use of material furnished, at the order of other persons, in remodeling the building situated upon such property will not have the effect of creating a mechanic's lien thereon.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*F. A. Boehmer & Son* and *H. C. Bittenbender,* for appellants.

*Jesse L. Root, E. C. Strode, Field, Ricketts & Ricketts, M. V. Beghtol, C. S. Polk, Talbot & Allen, C. S. Allen* and *Mockett & Peterson,* contra.

BARNES, J.

This action was commenced by H. W. Horton in the district court for Lancaster county, for the foreclosure of a mechanic's lien against an incorporated charitable institution known as "Tabitha Home," situated near the city of Lincoln. The petition was in the usual form for materials furnished Tabitha Home under an alleged contract. Certain other persons claiming mechanics', judgment and mortgage liens were made parties defendant, and filed answers and cross-petitions setting up their

Horton v. Tabitha Home.

claims, aggregating $22,280.32, exclusive of interest and costs. To the petition and cross-petitions the Home answered, admitting that it is a corporation, that it is the owner of the property in controversy, and denying the unadmitted allegations of the petition and cross-petitions. The minor children, inmates of the orphans' department of the home, applied for and were given leave to file an answer and cross-petition, which consisted of a general denial of the averments of the petition and all cross-petitions. The names of said minors and orphans, some 13 in number, are given, with the averment that they are minors and orphans, inmates of and confined in said Tabitha Home, a charitable institution, and have an interest therein; "that the Home is a corporation under the laws of this state, existing as a charitable institution, the object and purpose of which is to maintain a home for orphans and aged people; that it became incorporated many years ago, and ever since said date has been and is now maintained as an orphans' home;  *  *  *  that its property and funds are controlled and handled by a board of trustees whose duty it is to use said funds and property for the purposes and objects for which the Home was incorporated, and that such board of trustees has no other interest or rights in the property of this Home; that the title to the property is held in trust by the corporation and its officers for the use and benefit of the inmates in furtherance of the object for which the home was created; that these answering minors have been inmates of the Home and were inmates thereof at the time when the alleged improvements were made, and that they are still inmates of this Home and being cared for in said institution; that no part of the material or labor described in these petitions and answers of the lienholders was necessary for the completion, maintenance or furtherance of the trust for which the Home was incorporated, but if said material was in reality furnished it was for a different purpose; that these orphans have a right to and lien on all the funds and property of said institution until they arrive of age. And that the board of trustees could not

use the funds or property of the Home for any other purpose. The minors pray that their interest may be protected and the property preserved .for the original trust for which it was intended."

By leave of court an answer and cross-petition was also filed by the aged inmates of the Home, in which it is alleged: "That Tabitha Home is a charitable institution duly incorporated, as appears from a copy of the articles attached to this cross-petition as exhibit A; that the Home was organized and is maintained as a charitable institution, and not for profit; that the corporation has no capital and has no funds or income outside of a few contributions, and that it has no property except that in controversy; that all of these answering inmates who had any funds made a contract with said Home for their support, board and lodging for the remainder of their lives, and that they paid their money to said Home for that purpose; * * * and before any of the alleged material was furnished or labor done, they entered said institution, in pursuance of their contract and payment of their money, and that they were in said Home long before and at the time when it is claimed that these materials were furnished and this labor was done; that the alleged material was not furnished at the request of these inmates, nor for their use and benefit, nor was it necessary to maintain the institution for its original charitable purpose." Then follows a list of the aged inmates, 19 in number, with the dates of their several entries, extending from November 21, 1887, to June 25, 1913, with the allegation "that they have each contributed all they had to the Home for their support, and that said sums of money so paid were accepted and are being retained by the Home under said contract for maintenance of these inmates; that they paid their money in good faith, and relied upon the charitable purposes of said Home and the articles of incorporation, believing the same to be true; that the Home was incorporated so that no one person might hold, own or control its property or funds, and that the board of trustees and the officers have no right or interest in this prop-

erty or funds as individuals, and have no authority to use the funds for other purposes than to support the inmates, and that they have no right or interest as individuals in the property of this institution; that the corporation has elected these officers in order that some one might transact its business in a proper manner, and for no other purpose; that neither the officers nor trustees receive any compensation, and that the corporation has no capital, and is dependent for its support upon free contributions, and that it has no real estate except that in controversy; that the material described in the petition and cross-petition herein was not furnished  *  *  * under the direction or request of the board of trustees of said Home, nor was it necessary for the continuance of the trust for which the Home was incorporated and continued; that these inmates, by reason of these facts, have a lien upon the property of the Home for the fulfilment of their said contract, and that the board of trustees or officers could not make any contract to divest these inmates of their said right." The answer concluded with a "prayer for protection of their rights, preservation of the property, and, in the event that the real estate be sold, the money paid in by these inmates may be refunded to them." The articles of incorporation of Tabitha Home were attached to the cross-petition, and show that they were filed for record April 4, 1890, and duly recorded in the proper records of Lancaster county; that the objects and business of the corporation are: "First. To erect and maintain an orphans' home for the benefit of the orphans of our land. Second. To erect and maintain a place where the sick and needy and feeble may be cared for. Third. To educate and train parties for the purpose of becoming deaconesses, nurses and attendants on hospitals, orphan homes or similar institutions. Fourth. The transaction of the business of the corporation shall be vested in five trustees to be elected by the members of the corporation, and who shall hold their office during the term of their natural life, except they may be removed for cause, or by resignation. Fifth. The indebtedness

of the corporation shall at no time exceed one-half of the value of such property as may at the time be owned by it."

The answer of J. H. Humpe, trustee, and a mortgagee, consists of a general denial of the averments of the answers and cross-petitions of the alleged mechanics' lien-holders, admits that the defendant Tabitha Home is and for many years has been duly incorporated as a charitable institution under the laws of this state; that it is the owner of the land described in the petition and cross-petitions. It is alleged that for the purpose of securing the payment of certain described notes, amounting in all to the sum of $10,250, issued by the corporation of Tabitha Home, said notes drawing interest as therein provided, and in pursuance of a resolution therefor duly adopted directing the trustees so to do, they, on the 22d day of September, 1908, duly executed and delivered to said Humpe a trust deed upon the said real estate; that the notes are outstanding and unpaid, though some are not yet due, but that the said trustee has a lien on said property for the security of said notes, which he asks to have protected by the decree of the court.

The Woodmen Accident Association filed an answer and cross-petition, setting up the execution of two promissory notes, amounting to $8,000, with 6 per cent. annual interest, secured by mortgages on the premises involved, which were duly executed by leave of the district court, and the mortgages, duly recorded, constitute prior liens; that the debt was not yet due, and there was no default in the payment of interest. The decree found the mortgages to be the first and prior liens, but not subject to foreclosure. No objections having been made thereto, the mortgages need not be further noticed. Replies were filed to all the cross-petitions, and the issues fully formed.

A trial was had, which resulted in findings and a decree in favor of plaintiff and all the cross-petitioners claiming mechanics' liens, and ordering a foreclosure thereof; that the liens of the several mechanics' lien-holders constitute a second lien; that J. H. Humpe, trustee,

has a third lien, and is not entitled to a foreclosure thereof; that H. Herpolsheimer Company has a fourth lien. A sale was ordered, and Tabitha Home, the aged inmates, and one Martin, as next friend in behalf of the orphan inmates, have appealed.

At the beginning of the trial it was stipulated that the material and labor furnished by the parties claiming the liens were as stated in the accounts attached to plaintiff's petition and the several cross-petitions of the lien-holders, and that the statements were filed and recorded as alleged, and the materials were furnished and used on the premises described, but that such stipulation would not be construed to mean that they were furnished by order of Tabitha Home or any of its officers. The stipulation is of considerable length, referring to each cross-petition, and "that the balance due on the above amounts and items is the amount specified in the petition and in the answers and cross-petitions of the respective parties, subject to the defenses tendered here by the Tabitha Home, as to the legal rights of the parties incurring these expenses to obligate the Tabitha Home to pay for them."

The fact that the material and labor was furnished to remodel one of the buildings is not disputed; but it is contended that it was not furnished for the Home, nor under any contract with the corporation therefor. We find no cross-appeal as against the Woodmen Accident Association, nor in favor of J. H. Humpe, trustee. This leaves for our consideration the contention against the mechanics' liens claims, and the Herpolsheimer Company judgment.

It is shown by the record that Tabitha Home is a charitable institution; that the title is in the corporation, with a board of trustees to manage its affairs, who are not vested with the title; that it has no fixed income, and is instituted, supported and maintained alone by voluntary contributions and donations by the charitably inclined, and by contributions made by the church organization of the denomination in whose interest the Home

95 Neb. 32

was created, and by which it is managed, assisted by contributions from others, and is in no sense an organization created and maintained for profit. It has no capital stock, and it is shown that in carrying out the corporate design over 2,000 orphans and inmates have been taken care of since its organization; that the aged and infirm have contributed large sums of money under a stipulation that they should be provided with care and a home during the remainder of their lives; their contributions ranging from $50 to $1,000, according to their ability to pay. It is clear that those inmates, should the decree of the district court be affirmed, will be deprived of the care and support toward which they have contributed, and will be thrown upon the charity of the public for their maintenance and support. There seems to be little, if any, doubt that, should the liens be enforced, the total indebtedness would swallow up the property, and the object of its creation and maintenance would be completely destroyed. On the other hand, should the decree be reversed and the existence of the liens be denied, plaintiff and cross-petitioners would probably lose what they have furnished for the improvement of the property. The importance of the case will therefore be well understood and appreciated.

It appears that Tabitha Home is an institution of charity. The real estate and funds provided for the building were contributed by generous people for the good of human beings who were not able to take care of themselves. It is a general charity. Its benefits are not limited to any class of people, and it appears that its doors are open to all alike.

It further appears that certain doctors practicing their profession in the city of Lincoln thought it would be a good thing to have a hospital at this institution; that it would help them in their business, and would be of benefit generally. They proposed to the trustees of Tabitha Home to make a hospital there. The trustees of the Home appear to have been cautious and discreet persons, and made a plain arrangment with the doctors that, if the

hospital was established there, it should be done without expense to the Home. The doctors had an estimate made, and claimed that the improvement could be completed for $6,000. The trustees then authorized them to go ahead and establish a hospital at their own expense and without charge to the Home. Thereupon, the doctors went ahead in a careless sort of way and incurred an expense of over $20,000, and now these claims are asserted as liens upon the property of the Home. The board of trustees of the Home, and especially the many old people who have put all of their worldly goods and money into the Home on the understanding that they were to have a place of refuge as long as they lived, and the many orphan children who are kept there, some of whom are being kept for a consideration paid by their friends, are all perfectly innocent in this matter; and, if the liens in question are established, the inmates will lose everything they have in connection with the Home.

The first question presented and discussed is, whether the contractors and materialmen have placed themselves in a position to have a lien upon this property, even if it is ordinary property and is not protected by the statute. It is by all parties considered that they did not make their contracts with the owners of the property; and, if they are held to have had a contract with the owners or trustees, it must be one implied from the conditions and circumstances under which they acted. The title of the property was in the Tabitha Home. The trustees of the Home had made their record plainly show that the property was not to be chargeable with these expenses. On a former occasion, when the trustees desired to charge the property with an indebtedness, they applied to the courts for permission to do so, and this was a matter of public record. That this was a charitable institution was also a matter of public record and notoriety. This court has many times held that "a person furnishing material for an improvement on real estate must take notice of the interest and title in the premises of the person with whom he contracted as shown by the public record, as

his lien for labor and material, aside from the improvement itself, attaches only to such interest." *Waterman v. Stout,* 38 Neb. 396. The question, then, is whether the parties who furnished the materials, if they intended to charge the accounts against the Tabitha Home and establish a lien thereon, should not have taken notice from the public records showing that the title was in the Home, which was controlled by a board of trustees, and that the trustees, when they made certain improvements on the Home, had themselves applied to the courts for permission to do so. The records of the corporation showed as explicitly as it could be shown that the Tabitha Home was not undertaking to make this improvement, and was not chargeable with the bills. Therefore it cannot be said that the parties had the right to go ahead and assume that the property of this charity was to become chargeable with the bills for material and labor, without making more inquiry than the evidence shows they made. The trustees as a body, or individually, took no action in ordering the material which was used in making the improvement; and no separate or independent action of any one or more of the trustees could create an indebtedness which would eventually ripen into a lien upon the property held in trust by them. Trustees have no power beyond that created by the trust, and any person dealing with them in matters beyond their power does so at his peril. *Stark v. Olsen,* 44 Neb. 646, 659; *Livermore v. Maxwell,* 87 Ia. 705; *Byron Reed Co. v. Klabunde,* 76 Neb. 801; *French v. Trustees of Griswold College,* 60 Ia. 482.

In *Fordyce v. Woman's Christian Nat. Library Ass'n,* 79 Ark. 550, 7 L. R. A. n. s. 490, it was said: "The immunity of the property of a charity from sale under execution rests on special grounds. The property of a corporation organized solely for charitable purposes is exclusively dedicated to public uses, as much so as the streets and alleys of a town or city; for this purpose the corporation is a mere trustee. *Benton v. Boston City Hospital,* 140 Mass. 13. It is of primary importance to the public that the trust shall be perpetuated. The trus-

tees of the corporation are usually unsalaried agents, devoting their time and labor to the use and benefit of the public. For their own wrongs and misdeeds they are personally answerable, just as are the physician and the attendants in a hospital. If the doctrine of *respondeat superior* is applied to them, it follows that, along with their other powers, they possess an implied power to destroy, by a wilful violation of their duties, by collusion, or by negligence, the public interests that they are selected to preserve." Further it was said: " 'A valid vested estate in trust (for charitable purposes) can never lapse or become forfeited by any misconduct in the trustee, or inability in the corporation to execute it, if such existed. Charity never fails; and it is the right as well as the duty of the sovereign, by its courts and public officers, as also by the legislature (if needed), to have the charities properly administered.' *Girard v. Philadelphia,* 7 Wall. (U. S.) 1, 15. 'With regard to the liability of charitable corporations or their trustees for the negligence of their agents or employees, there is some difference of opinion, but the decided weight of authority denies such liability; this on two grounds: First, that, if this liability were admitted, the trust fund might be wholly destroyed and diverted from the purpose for which it was given, thus thwarting the donor's intent, as the result of negligence for which he was in nowise responsible; second, that, since the trustees cannot divert the funds by their direct act from the purposes for which they were donated, such funds cannot be indirectly diverted by the tortious or negligent acts of the managers. of the funds or their agents or employees.' "

It follows that in this case the board of trustees could not do by indirection what they could not do directly. *Avery v. Baker,* 27 Neb. 388; *Grissom v. Hill,* 17 Ark. 483; *Fordyce v. Woman's Christian Nat. Library Ass'n, supra; Zion Church v. Parker,* 114 Ia. 1.

Another question of importance is whether the property of the Home could be incumbered with a mortgage or otherwise, except under the direction of the court, pro-

viding what the money realized on the incumbrance should be used for. At the common law no lien was allowed upon church property. The revenue of a religious corporation and any profits realized from this property could be appropriated by the creditors, but not the property itself. Phillips, Mechanics' Liens (3d ed.) sec. 185, after reciting this condition of the common law, says: "It is well worthy of consideration whether all who deal with it do not contract upon the credit of these resources (the revenues and profits derived therefrom) alone." It appears that many cases have arisen in this country in which in the absence of any statute on the subject, the courts have been divided upon the proposition as to whether any mechanics' lien could be established upon church property.

The property in question in the case at bar was owned by the Tabitha Home, a corporation organized for the purpose of holding the title thereof. This corporation is not a religious society. A religious society, however, concluded to build a home. They solicited funds from the charitably inclined with which to construct it, and of course the religious society itself contributed towards the construction of the building. If we look to the form of the matter only, this was not the property of a religious society; if we look to the substance however, it was the property of such society. If it can be held to be the property of a religious society, it comes directly within section 651, Rev. St. 1913, and if it does, then, in case it is desired to sell or exchange the property or incumber it by a mortgage or otherwise, the district court, upon petition and good cause shown, might authorize it to be done; and, if that authority was granted, there would be included in the order a direction as to how the proceeds of the incumbrance should be appropriated or invested. Such order would require that the proceeds be appropriated and invested in accordance with the original terms upon which the real estate became invested or entrusted to such religious society. The lienholders, however, have cited some sections of the statute, which is a general one, and in-

tended to cover other cases of organized societies besides religious societies, and which of course would not have any application to the case at bar. Their attempted application of those sections of the statute do not appear to be warranted by the Revised Statutes of 1913, where the various sections of the statute are arranged. Section 651, Rev. St. 1913, provides: "When any real estate shall have been or may hereafter be bequeathed, aliened, donated, or otherwise entrusted to any religious society in this state, or to any of the trustees or officers of any such society, and such society shall be desirous to sell, exchange, or incumber, by mortgage or otherwise, any such real estate, it shall be lawful for the district court of the proper county, upon good cause shown upon petition of any such society, or some person authorized by them, to make an order authorizing the sale or incumbrance of any such real estate, and said court may include in such order directions how the proceeds of such sale or incumbrance shall be appropriated or invested: Provided, such order shall in no case be inconsistent with the original terms upon which such real estate became invested in or entrusted to such religious society." It appears beyond all question that the organization was for charitable purposes, and was under the jurisdiction and control of the Evangelical Lutheran Church, and it is our view that it was within the provisions of the statute above quoted. If this be true, no action was had of any kind, as directed by the statute, conferring authority upon the board of trustees which could result in the creation of a lien or an incumbrance upon the property, and, as we view the record, no liens were created, for it was beyond the power of the board to do by indirection what they could not do directly.

While there is some conflict in the authorities, the great weight of the adjudicated cases favor the conclusions above expressed. It is to be regretted that the claimants, seeking to establish their liens are denied that remedy; but, on the other hand, a decree establishing such liens and an order of foreclosure would divert the property

from the charitable purposes to which it has been dedicated, and would completely destroy its object, with the result that the orphans and the aged and infirm inmates of the Home would be left without any means of support, and would be thrown upon the general public for suitable care and maintenance. As we view the authorities, this should not be done.

The judgment of the district court establishing the claimants' liens, and ordering a foreclosure and sale to satisfy the same, is reversed, and the cause is remanded to the district court for such other and further proceedings in harmony with this opinion as may be desired.

REVERSED.

LETTON, J. I am unable to agree with the conclusions of fact announced in the opinion, and also with the legal principles stated as applying to the facts in evidence in the case. I therefore dissent.

ROSE, J., dissents upon the same ground.

HAMER, J., concurring.

The corporation seems to have been organized as a charitable institution to maintain a home for orphans and aged people—persons who are unable to provide for themselves. The purpose of the existence of the institution is not for profit. It has no property except that in controversy. The aged persons, for the benefit of whom the Home in part exists, appeared to have contributed all their means to establish and maintain it. This was done under a contract so that the inmates should have a home that would shield them in their old age, infirmity, and feebleness.

It is provided in its articles of incorporation that the transaction of the business of the Home "shall be vested in five trustees to be elected by the members of the corporation." These trustees have no authority to bind the corporation and create a debt against it, unless they act within the purposes of the corporation as set forth in its

articles.  The thing proposed to be built and for which it is claimed the indebtedness on mechanics' liens was incurred was a hospital.  I am unable to see how these people needed a hospital.  Suppose that the trustees had undertaken to construct a flour-mill, would they have had authority to do it?  Could they engage in any sort of commercial venture?  Could they do anything outside of that which the articles of incorporation would naturally include?  The character of the occupation of the trustees was such that it demanded of the one who would do business with them a critical inspection of their powers.  The hospital was to be built without expense to the Home. The doctors who were going to build it so represented to the trustees.  Therefore the mechanics' lien people can only look to the doctors.  They certainly cannot look to the trustees, who never intended to incur an obligation against this charitable institution.  If there is to be a loss, let those whose vigilance in getting business made the loss possible suffer for it.  The helpless orphans and the feeble old people should not be turned out of their refuge because the doctors overestimated what they could do, or because they conceived the idea of building a hospital for a charitable institution which did not need it, and whose articles of incorporation did not contemplate it.

Section 153, ch. 16, Comp. St. 1911, contains a provision that all funds received by any such corporation (charity society) shall be used in the first instance; or shall be vested, and the income thereof used (after paying the necessary expenses) "for the exclusive purpose set forth in the articles of association, and no portion thereof shall be used for any such purpose except within this state, and no portion of the funds of any such corporation shall be used or contributed toward the erection, completion, or furnishing of any building not owned or used by such corporation."

Section 154c of the same chapter provides that "the books, records and files pertaining to any such Home shall be subject to the inspection of the auditor of public accounts of this state or any deputy or clerk authorized by

him to inspect the same." It is further provided in the same section that, "in case of any diversion of the funds or other property acquired by any organization under this act from the object and purposes of such Home or Homes, or funds therefor, the attorney general is hereby authorized to bring suit in any court having general jurisdiction in equity matters in the state, to restrain and prevent any diversion of such funds or property, and to adjust any and all wrongs concerning the same."

It will be seen that the spirit of this legislation tends to prevent any diversion of the property from the charitable purpose intended. It seems to the writer that, if the trustees undertook to endanger the safety of the property by engaging in a contract which might incumber it with mechanics' liens in carrying out a purpose not contemplated by the articles of incorporation, such effort of the trustees would be beyond their jursdiction, and forbidden by the general spirit of our laws towards charitable institutions.