DANIEL D. MALCOLM, APPELLEE, v. EVANGELICAL LUTHERAN HOSPITAL ASSOCIATION, APPELLANT.

FILED NOVEMBER 17, 1921. No. 21674.

1. Hospitals: CAUSE OF INJURY. In respect to the causes of the alleged injury the verdict of the jury is a complete and specific answer.

2. ———: NEGLIGENCE: QUESTION FOR JURY. Whether or not the nurse was careless and negligent in administering the hypodermic injection is a question for the jury.

3. Master and Servant: TORTS OF SERVANT: LIABILITY. A master is responsible for the torts of a servant when he is acting within the scope of his employment.

4. Charities: HOSPITAL OPERATED FOR GAIN. A hospital supported and maintained and built by private subscription and the subscription of stockholders, and which declares dividends to its stock-

holders, and usually charges reasonable fees for services rendered, is not an eleemosynary institution, but one for private gain.

5.  **Hospitals:** Liability. A hospital incorporated and conducted for private gain is liable to patients for the negligence of nurses and other employees.

6.  **Evidence:** Hypothetical Questions. It is sufficient in propounding a hypothetical question to limit the question to the statement of facts containing the idea upon which the evidence is elicited or brought out.

Appeal from the district court for York county: Edward E. Good, Judge. *Affirmed.*

*Sandall & Wray,* for appellant.

*W. L. Kirkpatrick, contra.*

Heard before Morrissey, C.J., Rose, Aldrich and Flansburg, JJ., Brown and Eldred, District Judges.

Aldrich, J.

Plaintiff in this case was a young man full of vigor, enjoying much vitality, and in robust health. There was one exception to this general condition of health. He had a rupture of the groin known as hernia. October 6, 1918, he contracted with the defendant for an operation at its hospital. Appellee stayed during the night of October 6 at the hospital, and the next morning, about 30 minutes before the operation, one of the hospital nurses came to his room and inserted a hypodermic needle into his right arm at an improper place and in a careless manner, at a point near the elbow, and then administered supposedly a preparation for the anæsthetic to follow. Then it was that the appellee complained of a severe pain that extended down into his hand and fingers, saying: "Gee, she must have struck my crazy bone; my hand hurts like my crazy bone had been bumped." Appellee was then taken to the operating table, laid flat on his back, his arms were secured with a sheet and the folds of a shirt in such a position that his hands were crossed one upon the other on his breast. The anæsthetic was administered while he

was in this position and the operation for hernia performed without unusual incident.

Immediately upon his regaining consciousness appellee complained to his attendants of the pain in his hand and elbow, which still remained and absorbed and diverted his attention from other discomforts. From that moment appellee's hand was never entirely free from pain and discomfort. Appellee remained in the hospital ten days and was then discharged. About three weeks after the operation appellee's hand and arm were still troubling him. Then Dr. McKinley made an examination of the injured member and inquired thoroughly into the history of the case. The injury was traced back to the hypodermic given at the hospital. His right hand and arm became impaired and deficient in strength. This is a fair, impartial and concise statement of the facts as they exist of record.

The defendant institution is supported by subscriptions of its stockholders, and declares dividends on its stock, and charged the plaintiff a reasonable fee for his operation.

Did this hypodermic cause the injury and pain which immediately followed? It must be conceded that plaintiff was absolutely sound, with the exception of this hernia, at the time of the operation, and that the injuries complained of immediately followed the insertion of the hypodermic needle. Was the injury complained of the natural and proximate result of the hypodermic injection? As a result of this injury the hand and wrist became atrophied and lost much in strength. Taking into consideration the health and strength of the appellee, and that his deficiency or weakness dates solely from the injection of the hypodermic, and from all the evidence in the record on this subject, it is plainly apparent that the administering of the hypodermic injection by Miss Oertel, one of the nurses of the institution, caused the injury complained of. The evidence on this subject is clearly manifest on an examination of the record. The case in

many of its aspects is not unlike the case of *Murphy v. Southern Pacific Co.,* 31 Nev. 120. The testimony of the appellee himself and the attending physicians clearly prove the situation. It is patent upon the face of all the facts that the atrophied and the apparent diseased condition of the arm dated from the injection of the hypodermic needle by the nurse and this is responsible for the situation and condition of the plaintiff as we find him. *Keane v. Village of Waterford,* 130 N. Y. 188.

Another proposition presented is, was this an eleemosynary institution or one for hire. The facts are that it had stockholders who paid the market price for the stock, and paid dividends on the stock, and charged patients what it was reasonably worth for services performed. This situation and these facts take it out of the line of charitable institutions and makes it responsible for the negligence of a nurse when acting within the scope of her duties. *Wetzel v. Omaha Maternity & General Hospital Ass'n,* 96 Neb. 636. The general principle that a master is responsible for the torts of a servant in the scope of his employment applies here. A hospital incorporated and conducted for private gain is liable to patients for the negligence of nurses and other employees. In the instant case we have a nurse administering a hypodermic injection in an unskilful, careless and negligent way. All this appears from the evidence in the record by a preponderance thereof. The attending physicians say that the hypodermic injection was administered at the wrong place in the arm in a negligent and careless manner. This is the finding of the jury, and we should not disturb it.

Whether or not the plaintiff's doing work delayed his getting well or caused an additional injury to his hand is purely a question for the jury, and they evidently found no bad effects from his activity. It is plainly evident from the record that there was no negligence on the part of plaintiff in his treatment during his entire illness.

In answer to the proposition that plaintiff's hypothetical questions do not properly reflect the evidence in the

case, we answer that these questions are not entitled to such a criticism. It is sufficient to say they reflect the evidence upon the point upon which testimony is sought, and on the whole cover all the questions sought to be answered by the witness, and did not mislead any one. They, and each of them, reflected the evidence in a fair way to elicit testimony upon the point sought.

The verdict is amply sustained by the evidence, and, such being the case, we are bound to follow the verdict of the jury as it is supreme in the realm of fact. All the citations made by defendant do not disprove this fact. The American jury is one of our settled institutions and is characteristic of the Anglo-Saxon race and has its full approval. The place that this hypodermic was administered, it is evident, was a mistake or a matter of misinformation. According to the evidence of the attending physicians, it was not properly administered, and negligently or ignorantly, as the case may be, administered in the wrong place in the arm.

The defendant makes severe criticism of the instructions as given by the court, beginning with instruction No. 4½ and ending his discussion with instruction No. 15. We have carefully examined and analyzed each instruction offered by the court. We find that the court in its instructions covered every proposition offered by the defendant and refused by the court. The court's instructions cover the issues of the case as well as any instructions we ever had the privilege to read. They carefully state the issues and profoundly analyze the law and make no mistake in the application of the law to the facts. The defendant in the course of the trial received the full benefit of its theory, and had all the advantages of its particular views, and got before the jury all of its material testimony, and the jury had an opportunity to consider the views and the facts held by the defendant. The plaintiff, on the other hand, fairly submitted his theories and facts and views of the issues of the case. The jury took into consideration, under the instructions

of the court, the law and its application to the facts. So
it may be said that all parties had a fair opportunity to
present and have tried all the issues of the case.

The verdict is amply sustained by the evidence and is
just and has the approval of law. By reason of these
facts, the judgment is

AFFIRMED.