EDWIN A. REILS ET AL., APPELLANTS, V. ALFRED NICHOLAS ET AL., APPELLEES.

287 N. W. 853

FILED OCTOBER 20, 1939. No. 30642.

C. A. *Sorensen* and *Homer L. Kyle,* for appellants.

*Walter R. Raecke* and *Harold A. Prince,* contra.

Heard before EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Edwin A. Reils, a minority stockholder, instituted this action in equity for himself and all stockholders similarly situated, and included the Coolidge Hospital and Sanitarium, a corporation, as plaintiff, against the trustees and secretary and treasurer of such corporation, to compel them to properly perform the obligations of a charitable trust.

The corporation was organized for charitable purposes under article 6, ch. 24, Comp. St. 1929. The articles of incorporation contain the following: "The objects and purposes of this Institution are, and shall be to assist those suffering with physical and mental disease or infirmity and no worthy person shall be excluded from the privileges and benefits thereof because of poverty."

The trial court dismissed the plaintiffs' cause of action, and from such order of dismissal the plaintiff Reils appeals, alleging as error the trial court's failure to order and direct the defendants, as trustees of the corporation, to operate and maintain its hospital in accordance with the articles of incorporation.

The Coolidge Hospital and Sanitarium was organized in 1917 and was the inspiration of Charles L. Coolidge, one

of the incorporators and for whom the hospital was named. The hospital is situated in Palmer, Nebraska, a town with a population of 600. Mr. Coolidge donated three farms to the corporation. The proceeds of the sale of two of the farms were sufficient to cover the cost of erecting the buildings and equipping the hospital, which accommodates 10 beds. There remained a 10,000-dollar endowment fund and a working capital of a few hundred dollars. The income of the corporation has been limited to the interest on the endowment fund, now invested in government securities, and rents received from a quarter-section of land, the total amount of which has not exceeded $1,000 a year in recent years.

At the outset the trustees endeavored to keep the hospital open by employing help for such purpose. The income from all sources was insufficient to keep the hospital in operation. Another and different means of operating it was found to be necessary. The matter was taken up with Mr. Coolidge, and the difficulties affecting the hospital were explained to him. The trustees attempted to comply with Mr. Coolidge's wishes and leased the hospital to different doctors who paid no cash rent of any kind. Mr. Coolidge knew of this arrangement and approved it. He died in 1923 or 1924. The hospital was leased in 1929 by the trustees to plaintiff, who occupied the premises until May 1, 1937. He was to care for and keep up the lawn and building. Material expenditures were taken over by the corporation. Reils was to permit other doctors to use the hospital, and in the operation thereof he was permitted to receive the profits. In 1935 difficulties arose between the trustees and Doctor Reils over his alleged refusal to cooperate with other doctors by permitting them to use the hospital as agreed upon. He was permitted to remain in the hospital through the year 1935 without a lease and until September, 1936, when a new lease was executed, expiring May 1, 1937. The dispute culminated in a suit in forcible entry and detention, wherein a judgment was rendered against Doctor Reils in the county court and an

appeal was perfected, the doctor removing from the hospital May 1, 1937. Doctor Reils testified that he first learned during the summer of 1935 that the hospital organization was a charitable one. November 27, 1936, he sent a postal money order for $5 as a donation to the corporation, which was rejected.

Stock in the corporation was issued in 5-dollar shares; each donor to the corporation in the amount of $5 would be entitled to one share of stock, and each share would entitle the owner thereof to one vote at stockholders' meetings. The stock was nonassessable and nontaxable, and no holder thereof was to receive any benefit from the corporation by reason of his ownership of such stock. The purpose of issuing the stock was to enable the corporation to perpetuate itself and designate who should have the right to vote and take part in the government and control of the corporation. It is apparent that the endowment fund and the property of the corporation, in the event it should be subsequently operated by some other charitable institution, could not be profitably divided among the stockholders, as claimed by plaintiff Reils.

About December 15, 1936, Doctor Reils procured 10 shares of stock in the corporation from one of his patients, crediting the patient with the amount of $50 on his account. He thereby became a minority stockholder. He carried on a publicity campaign in a newspaper and by handbills, setting forth that the hospital was organized for charitable purposes and admonishing that the trustees should comply with the purposes of the corporation and fulfil their obligations to the public accordingly. The hospital is now leased to a trained nurse for the same consideration for which Doctor Reils rented it. He at this time operates what is known as the Cottage Hospital.

Doctor Reils is the only person appearing for the plaintiffs, and, even though the corporation is named as a plaintiff, it is apparent that it is not, in reality, a party plaintiff. The conduct of Reils as a minority stockholder is obvious. Without doubt, the hospital should be run,

if possible, as contemplated by its articles of incorporation, and the trustees have shown an earnest endeavor to so operate it. It is not conceivable that, on a 10,000-dollar endowment fund and with an income of less than $1,000 a year, the hospital could be operated as contemplated in the articles of incorporation. Even the donor of most of the funds used in building the hospital and creating its endowment fund was told of this difficulty and disclosed his desire to have the hospital kept open. The record is void that any person, eligible to be treated in the hospital free of charge, has ever requested such treatment.

There is no occasion to discuss the 10,000-dollar loan complained of by Doctor Reils in this proceeding, for the reason that the money evidencing such loan had been turned back to the corporation, and by its trustees invested in government securities, prior to the time that the plaintiffs' action was tried, and Doctor Reils' complaint relating to such transaction is a nullity. He is not in a position to complain of the prior acts and management of this corporation.

As held in *Home Fire Ins. Co. v. Barber,* 67 Neb. 644, 93 N. W. 1024: "Subsequent stockholders have no standing, as a general rule, to attack prior mismanagement of the corporation." In *Alexander v. Searcy,* 81 Ga. 536, 8 S. E. 630, 12 Am. St. Rep. 337, the court stated (p. 550): "The weight of authority seems to be that a person who did not own stock at the time of the transactions complained of, cannot complain or bring a suit to have them declared illegal."

In *Home Fire Ins. Co. v. Barber, supra,* it is further said: "The right of the stockholder to sue exists because of special injury to him for which otherwise he is without redress. If his interest is trifling and the injury thereto of no consequence, he cannot sue to compel righting of wrongs to the corporation. *McHenry v. New York, P. & O. R. Co.,* 22 Fed. 130; *Albers v. Merchants Exchange of St. Louis,* 45 Mo. App. 206."

It will be recalled that Doctor Reils, apparently for the purpose of bringing this action, obtained his stock December 15, 1936, seven years after he had had the use of the hospital under the arrangement, as above stated, and at the time of the difficulty with the trustees.

The cases which hold that a subsequent stockholder may sue for mismanagement are reflected by the case most commonly cited, *Ramsey v. Gould*, 57 Barb. (N. Y.) 398, discussed in the *Barber* case (p. 659) : "Plaintiff, believing that there had been mismanagement, bought shares for the purpose of proceeding against the directors and officers and 'bringing them to justice.' The court permitted the suit upon the ground that plaintiff's motives were immaterial. But it assumed, without discussion, that he had an interest to vindicate, and had suffered some wrong, which is the real question on which such cases depend. Moreover, it is by no means clear that the motives behind a stockholder's suit are immaterial. Where stock is acquired for the purpose of bringing suit, it has been held that the complainant is a mere interloper, entitled to no consideration. (Citing *Hawes v. Oakland*, 104 U. S. 450, and other cases.) And stockholders' suits not brought in good faith in the interests of the corporation have been dismissed on that ground." Citing *Beshoar v. Chappell*, 6 Col. App. 323, 40 Pac. 244.

A principle of law applicable to the instant case follows: "While equity will compel the trustees to exercise their discretion, and will decide, as a question of fact, whether the trustees have reasonably and fairly exercised their discretion, where such discretion is being fairly and honestly exercised the court will not control or interfere with it, nor substitute its own discretion for that of the trustees." 14 C. J. S. 508, sec. 49.

Courts of equity have general supervision and administration of charitable trusts and exercise extensive supervisory jurisdiction over such trusts to protect them and enforce their execution. In the instant case, the trustees have exercised a reasonable and fair discretion in the

management of the trust, considering all of the circumstances and conditions surrounding it.

The judgment of the district court is

AFFIRMED.