GERTRUDE MULLER, APPELLANT, v. THE NEBRASKA METHODIST HOSPITAL, A CORPORATION, APPELLEE.

70 N. W. 2d 86

Filed April 29, 1955. No. 33694.

*Abrahams & Kaslow,* for appellant.

*Swarr, May, Royce, Smith & Story,* for appellee.

*Joseph O. Burger, Edwin Cassem, George N. Mecham, John J. Gross,* and *Sam C. Zimmerman,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Gertrude Muller brought this action in the district court for Douglas County against The Nebraska Methodist Hospital, a corporation. The purpose of the action is to recover damages for injuries she claims to have suffered while a patient in a hospital owned and operated

by the defendant. The basis for the action is her claim that defendant was negligent in furnishing an unsafe operating table for her use. The trial court sustained defendant's motion for a summary judgment and, from the overruling of her motion for a new trial, plaintiff appealed.

Appellee is a nonprofit corporation organized under the laws of Nebraska for the purpose of engaging in charitable work. Its principal place of business is in Omaha, Douglas County, Nebraska, where it is engaged in operating and maintaining a hospital to carry out its charitable purposes. On April 25, 1951, appellant entered this hospital for surgery. She entered as a paying patient, agreeing to pay the regular and established charges for hospital services and care preparatory to and during the course of such surgery. In consideration thereof appellee agreed and undertook to provide appellant with suitable, safe, and proper care and facilities. On April 26, 1951, appellant, while a patient in the hospital, was taken to a room therein used for surgery and there placed on a table furnished by appellee and used for that purpose. This table consisted of two sections. The lower section thereof, on which the lower limbs of appellant rested, was so constructed that it could be raised or lowered by means of hydraulic pressure regulated and controlled by a foot pedal. It was intended that such raising and lowering would be done very gradually. While appellant was on the table completely anesthetized an attendant used the foot pedal. This caused the lower section of the table to drop instantly and resulted in appellant's back being severely strained and wrenched, which caused her to have great bodily pain and permanent injuries. The sudden dropping of the lower section of the table, when the attendant stepped on the foot pedal, was due to a defective condition of the mechanism regulating and controlling the hydraulic pressure.

The foregoing facts are either stipulated to, admitted

by the pleadings, or admitted by the motion for a summary judgment for the purpose of ruling thereon.

The principal question raised by this appeal is, shall we adhere to the doctrine of immunity for nonprofit charitable corporations from tort liability, a doctrine which has long been established in this state by holdings of this court? See, Duncan v. Nebraska Sanitarium & Benevolent Assn., 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. N. S. 973, Ann. Cas. 1913E 1127; Sibilia v. Paxton Memorial Hospital, 121 Neb. 860, 238 N. W. 751. However, such nonliability is restricted to inmates, participants, or recipients of the charity and not to strangers or business invitees. See, Marble v. Nicholas Senn Hospital Assn., 102 Neb. 343, 167 N. W. 208; Wright v. Salvation Army, 125 Neb. 216, 249 N. W. 549. Nor is it applicable to hospitals incorporated and conducted for private gain. Malcolm v. Evangelical Lutheran Hospital Assn., 107 Neb. 101, 185 N. W. 330; Wetzel v. Omaha Maternity & General Hospital Assn., 96 Neb. 636, 148 N. W. 582, Ann. Cas. 1915B 1224.

Appellant asks us to re-examine our holdings and seeks to have us reverse them on the basis that they are illogical and fundamentally unsound because they are based on concepts and conditions which no longer exist. On the other hand appellee asks us to apply the doctrine of stare decisis thereto.

"The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to, unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so." 14 Am. Jur., Courts, § 61, p. 284.

We said in Scott v. Scotts Bluff County, 106 Neb. 355, 183 N. W. 573: "So, where the court has decided a question of law in another case and a like state of facts is subsequently presented, the rule of stare decisis applies and will not be easily changed." To the same effect, see Bulgrin v. Schlechte, 88 Neb. 278, 129 N. W.

272; Patterson v. Kerr, 127 Neb. 73, 254 N. W. 704.

However, we have also said: "I fully appreciate the importance of the doctrine stare decisis, and with what reluctance courts consent to the reversal of rules established by repeated decisions, although confessedly erroneous, particularly such as have become rules of property. In such cases, according to the dictates of common justice, they should be adhered to until changed by statute. There are, it is true, to be found cases holding that the same principle is applicable to all statutory constructions, whether involving rules of property or mere questions of practice; but such a consecration of the doctrine of stare decisis is opposed to reason and the overwhelming weight of authority. That rule, like all others, is not without its exceptions, and, in the absence of complications resulting from property rights, it is the undoubted privilege, if not indeed the duty, of courts to re-examine their decisions whenever satisfied that they are fundamentally wrong." State v. Hill, 47 Neb. 456, 66 N. W. 541.

In considering the latter the following principle applies: " 'Before overruling a former decision deliberately made, the court should be convinced, not merely that the case was wrongly decided, but that less injury will result from overruling than from following it.' McEvoy v. City of Sault Ste. Marie, 136 Mich. 172." Torbitt v. Village of Bennett, 98 Neb. 129, 152 N. W. 301.

Appellant calls our attention to the general principle that for negligent or tortious conduct liability is the rule and that the law's emphasis, under such circumstances, is ordinarily on liability, not immunity. We are fully aware that immunity from liability for negligent or tortious conduct is an exception but this court has, since 1912, established such an exception for nonprofit charitable corporations insofar as inmates, participants, or the recipients of the charity are concerned. Other states have adopted a similar exception ranging from complete immunity to varying degrees thereof. See, Crossett

Health Center v. Croswell, 221 Ark. 874, 256 S. W. 2d 548; Jurjevich v. Hotel Dieu (La. App.), 11 So. 2d 632; Howard v. South Baltimore General Hospital, 191 Md. 617, 62 A. 2d 574; Mastrangelo v. Maverick Dispensary, 330 Mass. 708, 115 N. E. 2d 455; Erwin v. St. Joseph's Mercy Hospital, 323 Mich. 114, 34 N. W. 2d 480; Kreuger v. Schmiechen (Mo.), 264 S. W. 2d 311; Rafferzeder v. Raleigh Fitkin-Paul Morgan Mem. Hospital, 33 N. J. Super. 19, 109 A. 2d 296; Williams v. Randolph Hospital, 237 N. C. 387, 75 S. E. 2d 303; Gregory v. Salem General Hospital, 175 Or. 464, 153 P. 2d 837; Bond v. Pittsburg, 368 Pa. 404, 84 A. 2d 328; Caughman v. Columbia Y.M.C.A., 212 S. C. 337, 47 S. E. 2d 788; Felan v. Lucey (Tex. Civ. App.), 259 S. W. 2d 302; Meade v. St. Francis Hospital of Charleston (W. Va.), 74 S. E. 2d 405; Baldwin v. St. Peter's Congregation, 264 Wis. 626, 60 N. W. 2d 349; Forrest v. Red Cross Hospital (Ky.), 265 S. W. 2d 80; Jensen v. Maine Eye & Ear Infirmary, 107 Me. 408, 78 A. 898, 33 L. R. A. N. S. 141; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 A. 595, 31 L. R. A. .224; St. Vincent's Hospital v. Stine, 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361; Cullen v. Schmit, 139 Ohio St. 194, 39 N. E. 2d 146; Weston's Adm'x. v. Hospital of St. Vincent of Paul, 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907; Bruce v. Young Men's Christian Assn., 51 Nev. 372, 277 P. 798; Bishop Randall Hospital v. Hartley, 24 Wyo. 408, 160 P. 385, Ann. Cas. 1918E 1172.

While the basis upon which the various courts rest their decisions vary, fundamentally there seem to be five principles on which they rest.

One is the trust fund theory, that is, that the funds and property of these institutions are held in trust and cannot be diverted to purposes other than those designated in the trust. This theory is defined in 10 Am. Jur., Charities, § 146, p. 695, as follows: "The trust fund doctrine in brief is that a trust fund cannot be made liable for breaches of trust by the trustees. The rationale of the doctrine as applied to charitable insti-

tutions, as a basis of immunity from suit, is that if the charity or trust fund could be used to compensate injured parties for the negligence of the agents or servants of the organization, the fund would be diverted to purposes never intended by the donor, and the charitable purposes of the creators or founders frustrated. The policy underlying this theory reduced to its essence, seems to be that the preservation of charitable trust funds is more desirable than a right to compensation from such funds for an injury inflicted by the operation of the charity." See, also, Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S. W. 2d 615; Crossett Health Center v. Croswell, *supra;* Gregory v. Salem General Hospital, *supra;* Bond v. Pittsburg, *supra.*

Another theory is public policy, that is, to allow recovery would be against public policy. This theory is defined in 10 Am. Jur., Charities, § 147, p. 697, as follows: "Another closely allied theory to the trust fund theory is one which denies recovery to recipients of a charity upon broad grounds of public policy, holding that inasmuch as such institutions are inspired and supported by benevolence and devote their assets and energies to the relief of the destitute, sick, and needy, the common welfare requires that they should be encouraged in every way and held exempt from liability for tort; and that to do otherwise would operate to discourage the charitably inclined, dissipate the assets of such institutions in damage suits, and ultimately, perhaps, destroy them." See, also, Jurjevich v. Hotel Dieu, *supra;* Dille v. St. Luke's Hospital, *supra;* Jones v. St. Mary's Roman Catholic Church, 7 N. J. 533, 82 A. 2d 187; Hearns v. Waterbury Hospital, *supra;* Rafferzeder v. Raleigh Fitkin-Paul Morgan Mem. Hospital, *supra;* Gregory v. Salem General Hospital, *supra;* Caughman v. Columbia Y.M.C.A., *supra;* Weston's Adm'x. v. Hospital of St. Vincent of Paul, *supra;* Southern Methodist University v. Clayton, 142 Tex. 179, 176 S. W. 2d 749; Morrison v. Henke, 165 Wis. 166, 160 N. W. 173; Cohen

v. General Hospital Society, 113 Conn. 188, 154 A. 435.

"Another reason put forward for not holding a corporation liable in any case for the negligence of its servants is that such corporations do not come within the main reason for the rule of public policy which supports the doctrine of respondeat superior, because they derive no benefit from what their servants do, in the sense of that personal and private gain which is the real reason for the rule." 10 Am. Jur., Charities, § 150, p. 699. See, also, Crossett Health Center v. Croswell, *supra;* Taylor v. Protestant Hospital Assn., 85 Ohio St. 90, 96 N. E. 1089, 39 L. R. A. N. S. 427; Hoke v. Glenn, 167 N. C. 594, 83 S. E. 807, Ann. Cas. 1916E 250; Southern Methodist University v. Clayton, *supra;* Vermillion v. Woman's College of Due West, 104 S. C. 197, 88 S. E. 649; Morrison v. Henke, *supra;* Schau v. Morgan, 241 Wis. 334, 6 N. W. 2d 212.

Another basis is that of implied waiver. This is defined in 10 Am. Jur., Charities, § 145, p. 694, as follows: "The theory, or one of the theories, favored by some of the cases as a basis for the general immunity of charitable organizations from suit is implied waiver by acceptance of benefits, on the ground that a person who accepts the benefit of a private or public charity enters into a relationship which exempts his benefactor from liability for the negligence of his servants in administering the charity, if the benefactor has used due care in selecting those servants. In such cases there is an assumption of risk by the person who seeks and receives the services of a public charity." See, also, Farrigan v. Pevear, 193 Mass. 147, 78 N. E. 855, 118 Am. S. R. 484, 7 L. R. A. N. S. 481; Hospital of St. Vincent of Paul v. Thompson, 116 Va. 101, 81 S. E. 13, 51 L. R. A. N. S. 1025; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 45 Am. S. R. 427, 25 L. R. A. 602; Wilcox v. Idaho Falls Latter Day Saints Hospital, 59 Idaho 350, 82 P. 2d 849; St. Vincent's Hospital v. Stine, *supra;* Bruce v. Young Men's Christian Assn., *supra.*

"In a few cases charitable organizations, principally hospitals, have been held to be immune from liability to recipients of the charity on the basis that they are performing a public function and aid in the performance of a public or quasi-public duty." 10 Am. Jur., Charities, § 148, p. 698. See, also, Schau v. Morgan, *supra*.

We realize there are other states that have adopted a total liability rule. See, Rickbeil v. Grafton Deaconess Hospital, 74 N. D. 525, 23 N. W. 2d 247, 166 A. L. R. 99; Foster v. Roman Catholic Diocese of Vt., 116 Vt. 124, 70 A. 2d 230, 25 A. L. R. 2d 1; Durney v. St. Francis Hospital, 46 Del. 350, 83 A. 2d 753; Haynes v. Presbyterian Hospital Assn., 241 Iowa 1269, 45 N. W. 2d 151; Noel v. Menniger Foundation, 175 Kan. 751, 267 P. 2d 934; Pierce v. Yakima Valley Mem. Hospital Assn., 43 Wash. 2d 162, 260 P. 2d 765; Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P. 2d 220; Geiger v. Simpson Methodist-Episcopal Church, 174 Minn. 389, 219 N. W. 463, 62 A. L. R. 716; Tucker v. Mobile Infirmary Assn., 191 Ala. 572, 68 So. 4, L. R. A. 1915D 1167; Nicholson v. Good Samaritan Hospital, 145 Fla. 360, 199 So. 344, 133 A. L. R. 809; Gable v. Salvation Army, 186 Okla. 687, 100 P. 2d 244.

Appellant calls our attention to the fact that the immunity doctrine in this country was, in its inception, to some extent based upon the supposed authority of English decisions which had been previously repudiated in England and were never subsequently followed there. See, President and Directors of Georgetown College v. Hughes, 130 F. 2d 810; McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. R. 529; Perry v. House of Refuge, 63 Md. 20, 52 Am. R. 495. If the reasons for the rule are sound then of course the mere fact that the English courts failed to adhere to their earlier decisions in regard thereto would be no reason for our now abandoning it.

Appellant calls our attention to Article I, section 13, of the Constitution of the State of Nebraska which provides: "All courts shall be open, and every person, for

any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."

This provision of the Constitution does not create any new rights but is merely a declaration of a general fundamental principle. It is a primary duty of the courts to safeguard this declaration of right and remedy but where no right of action is given or remedy exists, under either the common law or some statute, this constitutional provision creates none. See, Goddard v. City of Lincoln, 69 Neb. 594, 96 N. W. 273; 16 C. J. S., Constitutional Law, § 709, p. 1495; 11 Am. Jur., Constitutional Law, § 326, p. 1124; Scholberg v. Itnyre, 264 Wis. 211, 58 N. W. 2d 698; Kreuger v. Schmiechen, *supra;* Simons v. Kidd, 73 S. D. 41, 38 N. W. 2d 883.

As stated in 11 Am. Jur., Constitutional Law, § 326, p. 1125: "It is a primary duty of the courts to safeguard the declaration of right and remedy guaranteed by a constitutional provision insuring a remedy for all injuries, but such a provision is not violated solely because the granting of a remedy rests in the sound discretion of a court."

"Courts of equity exercise extensive supervisory jurisdiction over charitable trusts to protect them and enforce their execution. * * *." Reils v. Nicholas, 137 Neb. 19, 287 N. W. 853.

"Charitable trusts are special favorites of courts of equity which will preserve and enforce them if possible under the rules of law." Hobbs v. Board of Education of Northern Baptist Convention, 126 Neb. 416, 253 N. W. 627. See, also, Matteson v. Creighton University, 105 Neb. 219, 179 N. W. 1009; Horton v. Tabitha Home, 95 Neb. 491, 145 N. W. 1023, 51 L. R. A. N. S. 161, Ann. Cas. 1915D 1139.

Not only are charitable trusts special favorites of courts of equity but the people of our state, speaking through their Constitution, have recognized the desirability of aiding such institutions by granting to the

Legislature the right of exempting from taxation property owned and used exclusively by such institutions for charitable purpose. See Article VIII, section 2, Constitution of the State of Nebraska, which provides, insofar as here material, as follows: "The Legislature by general law may exempt * * * property owned and used exclusively for educational, religious, charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user."

The Legislature has exercised this right by providing as follows: "The following property shall be exempt from taxes: * * * (3) Property owned and used exclusively for educational, religious, charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user; * * *." § 77-202, R. R. S. 1943.

We applied this exemption in the following situation: "The Franciscan Sisters, a religious society, founded the hospital and hold title to its property. The Sisters of St. Francis of the Perpetual Adoration have charge of the institution. The general purpose of the sacred order to which these Sisters belong is to nurse the sick and take care of orphans. Twenty-six Sisters engaged in their life work are caring for the sick at St. Elizabeth Hospital. In devoting themselves to it they are prompted by the love of God. They are bound by a vow of poverty. Property owned by them is used for the purposes to which they have dedicated their lives. Beyond food, clothing and shelter they receive nothing for their services. No individual, society or corporation received any pecuniary profit from hospital property, funds or earnings. Surplus and donations are used to enlarge buildings and to improve hospital facilities, equipment and service. The institution is open alike to charity patients and others without regard to race or religious beliefs. Reasonable compensation is required from those who are able to pay it. Only a small percentage of

those who seek rooms, food and hospital care, however, can be considered charity patients, but this does not change the charitable purpose for which the property as a whole is used, where no one receives any pecuniary profit from any source. Part of the burdens of government in caring for the poor is borne by the hospital. Charitable gifts and gratuitous services are contributed to the welfare of society. There are therefore reasons for immunity from taxation. The better rule, one sanctioned by precedent, is that the property in controversy is used exclusively for religious and charitable purposes within the meaning of the constitutional and statutory provisions relating to exemptions." St. Elizabeth Hospital v. Lancaster County, 109 Neb. 104, 189 N. W. 981.

It seems to us this declaration of policy makes it of prime importance to the public that the purpose of charitable institutions shall be carried out by protecting them and fostering the purposes for which created.

As stated in Vermillion v. Woman's College of Due West, *supra*: "The State is likewise most deeply interested in the preservation of public charities. Questions of public policy must be determined upon consideration of what on the whole will best promote the general welfare."

And in Caughman v. Columbia Y.M.C.A., *supra*: "* * * The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists.' (Vermillion v. Woman's College of Due West, 104 S. C. 197, 88 S. E. 649.)"

In Horton v. Tabitha Home, *supra*, we quoted the

following from Fordyce v. Woman's Christian Nat. Library Assn., 79 Ark. 550, 7 L. R. A. N. S. 490: " '* * * It is of primary importance to the public that the trust shall be perpetuated. The trustees of the corporation are usually unsalaried agents, devoting their time and labor to the use and benefit of the public. For their own wrongs and misdeeds they are personally answerable, just as are the physicians and the attendants in a hospital. If the doctrine of respondeat superior is applied to them, it follows that, along with their other powers, they possess an implied power to destroy, by a wilful violation of their duties, by collusion, or by negligence, the public interests that they are selected to preserve.' "

We recognize that in recent years some courts have abandoned a previous declaration of absolute or qualified immunity and adopted the doctrine, of liability. See, Haynes v. Presbyterian Hospital Assn., *supra,* 1950; Ray v. Tucson Medical Center, *supra,* 1951; Pierce v. Yakima Valley Mem. Hospital Assn., *supra,* 1953; Noel v. Menninger Foundation, *supra,* 1954.

However, we cannot agree with some of the reasons given by these courts for making such change. These opinions suggest that the hardships and burdens of maintaining charitable organizations that existed in the past have, to a large extent, ceased to exist; that these institutions have, in many instances, grown into enormous businesses handling large funds and managing and owning vast properties, much of which is tax free; that in many instances they are set up by large trusts or foundations, enjoying endowments and resources beyond anything thought of when the matter of immunity was first considered; and that they now have a capacity for absorbing losses which did not exist even a few decades ago.

Such may be the general situation in those states where opinions were adopted using this as a background to justify the change but we do not believe such to be

true in Nebraska when we consider the varied institutions to which this doctrine has application; such as, churches, Y.M.C.A.'s, Y.W.C.A.'s, Salvation Army, Boy Scouts, and other organizations falling within this classification. From our observation we believe most of these organizations still have plenty of hardships and burdens in connection with their efforts to carry out the charitable purposes for which they are organized.

Some of these opinions suggest the thought that private charity has been displaced, to a large degree, by the government, both state and federal. While we recognize that to be true to some degree, particularly in the field of hospitals, we are not willing to say the time has come when it has reached the stage where charitable institutions, organized for such purposes, are no longer needed. We do not think such hospitals are intended to completely take the place of charitable hospitals. The latter's continued operation and maintenance always has been and still should be fostered for the benefit of the public.

As stated in Forrest v. Red Cross Hospital, *supra*: "As we gather the reasoning in the opinions from those jurisdictions that have abandoned this well-rooted and salutary policy, it is based upon the theory that private charity has been displaced by a paternalistic government, if not a welfare state, which furnishes free charitable services to the indigent. However, there is still a school of thought in America which does not believe that private charity is a thing of the past and that all burdens of suffering humanity should be placed in the lap of government, state and federal."

Our re-examination of the question convinces us that our present rule is both correct and logical and we therefore refuse to disturb it.

That other courts, who had previously adopted some form of immunity, have recently come to the same conclusion is evidenced by the following cases: Crossett Health Center v. Croswell, *supra*, 1953; Mastrangelo v.

Maverick Dispensary, *supra,* 1953; Kreuger v. Schmiechen, *supra,* 1954; Rafferzeder v. Raleigh Fitkin-Paul Morgan Mem. Hospital, *supra,* 1954; Williams v. Randolph Hospital, *supra,* 1953; Bond v. Pittsburg, *supra,* 1951; Felan v. Lucey, *supra,* 1953; Meade v. St. Francis Hospital of Charleston, *supra,* 1953; Baldwin v. St. Peter's Congregation, *supra,* 1953; Forrest v. Red Cross Hospital, *supra,* 1954.

We think, as stated in De Groot v. Edison Institute, 306 Mich. 339, 10 N. W. 2d 907, that: "In this jurisdiction it is well settled that eleemosynary institutions are exempt from such liability as is asserted in the instant case. Such a rule was adopted for the protection of those institutions and should it be desirable to depart from that rule, it should be done by legislative action."

And, as stated in Bond v. Pittsburg, *supra*: "If and when there is to be any change in the doctrine of the immunity of charitable institutions from tort liability, it ought to be effected, not by the courts, but by the legislature, which is, of course, the ultimate tribunal to determine public policy." See, also, Smith v. Congregation of St. Rose, 265 Wis. 393, 61 N. W. 2d 896; Forrest v. Red Cross Hospital, *supra.*

It will be noted that appellant was a paying patient. As to this feature of the case it is stated in 10 Am. Jur., Charities, § 151, p. 700, that: "The fact that patients who are able to pay are required to do so does not deprive a corporation of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not private gain, but contribute to the more effectual accomplishment of the purpose for which the charity is founded."

In Duncan v. Nebraska Sanitarium & Benevolent Assn., *supra,* we said, by quoting from Duncan v. St. Luke's Hospital, 98 N. Y. S. 867, that: " '* * * Nor can we see any reason why there should be any difference

in the rule where the tortious act which caused death is alleged to be a breach of an express contract than where it is alleged to be a breach of an implied contract, or where no contractual relation at all existed.' " See, also, Sibilia v. Paxton Memorial Hospital, *supra*.

That this is the viewpoint of most states that have passed on this question is evidenced by the following: Meade v. St. Francis Hospital of Charleston, *supra;* Williams v. Randolph Hospital, *supra;* Jurjevich v. Hotel Dieu, *supra;* Jones v. St. Mary's Roman Catholic Church, *supra;* Downs v. Harper Hospital, *supra;* Fisher v. Ohio Valley General Hospital Assn. (W. Va.), 73 S. E. 2d 667; Forrest v. Red Cross Hospital, *supra;* Wilcox v. Idaho Falls Latter Day Saints Hospital, *supra;* Bishop Randall Hospital v. Hartley, *supra;* Weston's Adm'x. v. Hospital of St. Vincent of Paul, *supra;* Taylor v. Protestant Hospital Assn., *supra;* Schau v. Morgan, *supra;* St. Vincent's Hospital v. Stine, *supra;* Greatrex v. Evangelical Deaconess Hospital, 261 Mich. 327, 246 N. W. 137, 86 A. L. R. 487.

We agree with what is stated in Williams v. Randolph Hospital, *supra:* "However, our examination of the authorities on the subject discloses numerous well-considered decisions holding that the immunity of charity from tort liability should not be made to depend upon whether or not the patient or patron assumes the obligation to pay for the services rendered to him by charity. This line of decisions represents what we consider to be the decided weight of authority, both in quality of reasoning and in numerical volume."

We recognize there are some authorities to the contrary on this issue, as there are on almost any issue involving the immunity doctrine, but, as stated in Tucker v. Mobile Infirmary Assn., *supra,* which is one of those cases: "As previously stated in this opinion, we recognize that the weight of authority in this country is opposed to the conclusion we have here reached."

Does the fact that appellee carried liability insurance

make the appellee liable to the extent thereof?

10 Am. Jur., Charities, § 152, p. 701, quotes the rule to be: "The fact that a charitable institution carries indemnity insurance indemnifying it from liability to a recipient of its bounty does not create liability, in instances where such charitable organizations are immune from liability."

We have held the fact a party carries liability insurance has no relevancy to the question of negligence. See, Fielding v. Publix Cars, Inc., 130 Neb. 576, 265 N. W. 726, 105 A. L. R. 1306; Bergendahl v. Rabeler, 131 Neb. 538, 268 N. W. 459.

As stated in Stedem v. Jewish Memorial Hospital Assn., 239 Mo. App. 38, 187 S. W. 2d 469: "To sustain plaintiff's contention it would be necessary (1) to rewrite, by construction, the contract of insurance so that it would become a contract between defendant and the insurer for the benefit of a third person, and not an insurance contract at all."

We think the correct rule is stated in Cristini v. Griffin Hospital, 134 Conn. 282, 57 A. 2d 262. It is as follows: "If the charitable institution is not liable. for the negligence alleged, it cannot be made liable because it took out insurance which would cover a judgment recovered against it. The fact is irrelevant to the question of liability." See, also, Dille v. St. Luke's Hospital, *supra;* Meade v. St. Francis Hospital of Charleston, *supra;* Schau v. Morgan, *supra;* De Groot v. Edison Institute, *supra;* Fisher v. Ohio Valley General Hospital Assn., *supra;* Woods v. Overlook Hospital Assn., 6 N. J. Super. 47, 69 A. 2d 742; Williams' Adm'x. v. Church Home, 223 Ky. 355, 3 S. W. 2d 753, 62 A. L. R. 721; Enman v. Trustees of Boston University, 270 Mass. 299, 170 N. E. 43; Herndon v. Massey, 217 N. C. 610, 8 S. E. 2d 914.

We recognize that in three states a different rule obtains but that is due to the qualified nature of immunity as expressed by the holdings in these courts.

See, O'Connor v. Boulder Colorado Sanitarium Assn., 105 Colo. 259, 96 P. 2d 835, 133 A. L. R. 819; Moore v. Moyle, 405 Ill. 555, 92 N. E. 2d 81; Anderson v. Armstrong, 180 Tenn. 56, 171 S. W. 2d 401. The rule is announced in Anderson v. Armstrong, *supra,* as follows: "The protection afforded a charitable organization is not immunity from suit in tort, but is one extended to the trust property itself from execution under a judgment in tort."

It is finally suggested that appellee should be held liable because the negligence complained of was the result of administrative neglect in furnishing a defective operating table. Generally a charity has been held immune from liability for negligence chargeable to the charity itself as well as from negligence chargeable to subordinate employees although in some cases a contrary point of view has been adopted.

As stated in Jones v. St. Mary's Roman Catholic Church, *supra:* "Further as to the plaintiffs' suggestion that the immunity rule does not extend to acts or omissions constituting administrative negligence, we are asked thereby to modify the established common law rule in this State. There is no merit in this contention. There can be no logical distinction between the tortfeasors when all act under the charitable corporation. The corporation acts, through its servants or agents, whether they be directors, trustees or instructors. Cf. Fair v. Atlantic City Hospital, 25 N. J. Misc. Rep. 65 (Circuit Court 1946); Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 126 N. E. 392 (Mass. Sup. Ct. 1920)."

And in Jurjevich v. Hotel Dieu, *supra,* the court said: "It is apparent that the doctrine of immunity of charitable institutions for the negligent acts of their servants is firmly established in the jurisprudence of this state. Plaintiff's counsel, however, contend that the action of Sister Agatha was not that of an employee of the institution, but of its manager or superintendent. In our opinion there is no difference in principle between the

action of the superintendent and that of her subordinates, so far as the liability of the hospital is concerned."

And in Ettlinger v. Trustees of Randolph-Macon College, 31 F. 2d 869, the court stated what we think is the logical and reasonable answer to this contention. Therein the court said: "Counsel for plaintiff attempt to distinguish the case at bar from the many other cases against charitable institutions, on the ground that the negligence here alleged is not the careless act of a nurse or other employee, but the negligence of the managers of the corporation themselves in failing to maintain the academy building in a safe condition. We do not think, however, that this is a valid distinction. If there had been negligence in the respects claimed, it would have been the negligence of those who were carrying on the charitable work in which the corporation was engaged; and we see no more reason for diverting the funds of the charity on account of their negligence than there would be if the negligence had been that of any minor employee." See, also, Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563; Gregory v. Salem General Hospital, *supra*; Schau v. Morgan, *supra*.

In view of what we have herein said we have come to the conclusion that the trial court was correct in sustaining appellee's motion for a summary judgment. Its action in doing so is therefore affirmed.

AFFIRMED.