Donald P. MILLER, Appellant,

v.

CONCORDIA TEACHERS COLLEGE OF SEWARD, NEBRASKA, a corporation, Paul Zimmerman, Dale Hansen, A. C. Bek, Harold Riggert, Oscar Wilk, H. K. Krohn, O. H. Graebner, L. C. Heine and E. C. Mueller, Appellees.

No. 16717.

United States Court of Appeals
Eighth Circuit.

Nov. 8, 1961.

Robert C. Guenzel and Donn E. Davis, Lincoln, Neb., made oral argument for appellant; Crosby, Pansing, Guenzel & Binning, Lincoln, Neb., were on the brief.

Flavel A. Wright, Lincoln, Neb., made oral argument for appellee; Cline, Williams, Wright, Johnson, Oldfather & Thompson, Lincoln, Neb., and Ivan A. Blevens, Seward, Neb., were on the brief.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This appeal is from a judgment entered by the United States District Court for the District of Nebraska, on separate motions of defendants-appellees, made at the close of plaintiff-appellant's case, pursuant to Rule 50(a) F.R.Civ.P. 28 U.S. C.A. The broad basic question presented thereby is concerned with the doctrine of immunity from damages, afforded non-profit charitable institutions, as declared by the Supreme Court of the State of Nebraska. Diversity of citizenship and requisite amount in controversy established in the record is the premise of federal jurisdiction. The parties will be referred to as they appeared in the District Court.

Concordia Teachers College is admittedly a non-profit educational corporation, organized under the laws of the State of Nebraska. It is an educational activity of the Lutheran Church, Missouri Synod. It is one of fourteen colleges operated by the Synod for the primary and exclusive purpose of training pastors and teachers of that church. Fifty-five per cent of its operating income and all its buildings on the campus at Seward, Nebraska, are subsidized by the church. The plaintiff at the time here considered was an enrolled resident student at the College. When he enrolled he executed a declaration of professional intent to prepare himself and devote his life as a Lutheran Minister of Religion, as did ninety-eight per cent of Concordia's enrolled students. The College required all single students to board at the College unless other arrangements were made with the Dean of Students. The College charged, in addition to tuition, $76.50 per school year for residence in its College Dormitory. James Hahn [1] was also an enrolled student at Concordia College from on or about September 1, 1957 to January 23, 1958. During that time he lived in the same dormitory as did appellant. Whether he ever executed a "declaration of profession" is not shown in the record. On the last-mentioned date, around 12:30 A.M., Hahn, while in a state of intoxication, shot appellant, Donald P. Miller, with a revolver causing severe, lasting and disabling injuries to Miller.

It is not necessary to a determination of the issues raised in this appeal that a detailed statement of facts leading up to that awkward and unhabituated event occurring on the campus at Concordia be made. It is sufficient to say that the theory of the plaintiff's claims is that the College and all the individual defendants in this case, (1) had a duty to properly supervise the students at the College, and particularly student activities in the dormitory operated by the College; (2) they

---

1. Hahn was named a party defendant in this action as commenced but is not a party to this appeal. After defendants' separate motions for directed verdict were sustained at the close of plaintiff's case, the trial continued in the District Court against Hahn as the sole remaining defendant. We were informed at oral argument that a jury verdict was returned in favor of plaintiff-appellant Miller and against Hahn and that the jury found the shooting here considered to have been "negligently" inflicted.

breached this duty because of the manner in which they undertook to perform those duties; and (3) such conduct was the proximate cause of plaintiff's injuries. As a consequence, plaintiff seeks recovery of damages from all the defendants by way of tort, and from the College for breach of contract also.

From the evidence adduced by plaintiff in support of both such claims, he states that it is reasonable to conclude:

"(1) It is reasonably foreseeable that a man who constantly misuses guns will have an accident.

"(2) It is reasonably foreseeable that a man who frequently carries loaded guns on his person might have an accident.

"(3) It is reasonably foreseeable that a man who leaves loaded guns around his room, in a dormitory occupied by college students, might have an accident.

"(4) It is reasonably foreseeable that a man who shoots blank ammunition in a dormitory occupied by college students, sometimes at other students, might have an accident.

"(5) It is reasonably foreseeable that a man who, in the judgment of the County Attorney, has a 'love for guns' might have an accident.

"(6) It is reasonably foreseeable that if the same man who has done all of the above acts and who has previously pointed a gun at a young girl, might have an accident."

It is from such a premise that the plaintiff contends all the defendants in this case were negligent, because they knew or should have known of the existence of danger in that situation being present in the dormitory in which he was housed that if defendants had exercised reasonable diligence in performance of the duties imposed on them to supervise the conduct of students, and particularly the activities of Hahn, they could and would have known of such danger and have foreseen that some fellow student of Hahn might be shot; and that defendants, having failed to do what reasonable

men with their jobs would have done under the circumstances, were guilty of negligence which was the proximate cause of his injury. The above is not only the premise of plaintiff's tort claim asserted in count 1 of his complaint against all the defendants, but it is likewise the premise of his claim for breach of contract made against the College in count 2 of his complaint.

The relation between plaintiff, a student, and the College in this case is established as being wholly compatible with the eleemosynary, non-profit, charitable character of Concordia Teachers College as established by its Articles of Incorporation and By-Laws. The primary purpose of that College was to train young people so that they might become preachers or teachers of the Lutheran Church. Appellant voluntarily assumed such a relationship to the College and executed a declaration of professional intent accordingly. That he thereby became and was a recipient of the avowed beneficent Christian charitable purpose established for the College is beyond dispute. Under Nebraska law it is clear that the immunity of a non-profit charitable institution to respond in damages for tort of its agents, or in breach of contract, is particularly applicable to "inmates, participants, or recipients of (its) charity." Muller v. Nebraska Methodist Hospital, 160 Neb. 279, 70 N.W.2d 86, 88 (1955); Cheatham v. Bishop Clarkson Memorial Hospital, 160 Neb. 297, 70 N.W. 2d 96 (1955); and Parks v. Holy Angels Church, 160 Neb. 299, 70 N.W.2d 97 (1955).

Notwithstanding the positiveness of Nebraska law in the above respects plaintiff contends that there is an exception thereto, i. e.: "A charitable corporation (under Nebraska law) ordinarily immune from liability for the torts of its agents, will be liable for their torts committed in the carrying out of non-charitable activities not directly related to its charitable purpose." In support thereof, plaintiff cites Marble v. Nicholas Senn Hospital Association, 102 Neb. 343, 167 N.W. 208 (1918), (a case where a busi-

ness "invitee" not an "inmate" in a hospital was injured); Malcolm v. Evangelical Lutheran Hospital Association, 107 Neb. 101, 185 N.W. 330 (1921), (where the institution was supported by subscriptions of its stockholders, dividends were declared on its stock and it was therefore held to be conducted for gain); and Wright v. Salvation Army, 125 Neb. 216, 249 N.W. 549, 550 (1933), (wherein it was argued the evidence showed that the plaintiff was an "invitee" and "not a recipient of the institution's charity," but not specifically so ruled; recovery was there denied on the ground that the plaintiff was contributorily negligent as a matter of law in exceeding the limits of his invitation if he was an invitee.) Clearly, these cited authorities are distinguishable on their facts from those present in the case at bar.

To bring his claim within the ambit of the "invitee" exception admittedly recognized by the Supreme Court of Nebraska in the above-cited authorities plaintiff contends, that his housing in the dormitory of the College was pursuant to a separate contract from that which he had with the College for his education to the ministry. The foundation for such assertion is that the dormity was operated for profit because the College charged $76.50 per school year for housing therein. He does not undertake to demonstrate and could not, in light of the facts contained in the record, contend for any other commerciability in his dealings with the College. He does not offer any proof that the dormitory in question, as a building, is divisible in its operation or use from other structures on the campus constituting Concordia Teachers College. He argues that "the housing of students attending college is not ordinarily an educational activity, any more than the housing of any other class of human beings." This, notwithstanding that he concedes: "that the social intercourse and fraternal spirit engendered by dormitory living is a part of the social development of the student," and that he understood "that such social development, and learning to get along with others, is undoubtedly a part of the education attained by attendance at the college."

The dormitory in which appellant and Hahn were quartered as students was as much a part of Concordia College as any other building on its campus. A concept of Concordia College cannot be formed, in light of the evidence in this case, by any attempt to consider separately the individual buildings on its campus from the total endowed purpose of all buildings constituting the College, whether the buildings were used in whole or in part as class-rooms, dormitories, or for other college purposes. The only inference is that they all formed a "group of buildings in which scholars are housed, fed, instructed, and governed under college discipline while qualifying for—[a degree], whether the (establishment) includes a number of (buildings) or a single (building) * * *." Yale University v. Town of New Haven, 71 Conn. 316, 42 A. 87, 91, 43 L.R.A. 490 (1899). The applicability of the last-cited case so ruling is brought home to Nebraska law by an opinion of the Attorney General for Nebraska, in the course of which it was said:

"We do not doubt that a privately endowed College which owns and uses property for dormitory purposes does not use the property for financial gain or profit merely because the tuition and fees charged may include the cost of rooms furnished to students where the college is one which is not being operated with a view to financial gain or profit, as is the case here." Report of Attorney General, Nebraska, 1951–1952. (September 20, 1951.)

That opinion was rendered in relation to taxation, but it is manifest that such is in accord with the law as declared by the Supreme Court of Nebraska, in: Nebraska Conference Association of Seventh Day Adventists v. County of Hall, 166 Neb. 588, 90 N.W.2d 50 (1958); House of Good Shepherd v. Board of Equalization, 113 Neb. 489, 203 N.W. 632 (1925); and Central Union Conference Ass'n v. Lancaster County, 109 Neb. 106, 189 N.W. 982 (1922).

Plaintiff's proof in this case clearly establishes that he was a "recipient" and not an "invitee" in all his dealings with Concordia College. The only reasonable inference is that the sum paid by him for housing could not be other than a small contribution to cost of maintenance of a college building which was wholly subsidized for charity purposes and was so understood by plaintiff, the College and the Church in which plaintiff hoped to become a Pastor or Teacher. Even if he paid full pecuniary compensation for his lodging, his relation to the College beyond doubt establishes plaintiff to be a "recipient" of charity and not an "invitee" in the dormitory at the time of the incident here considered. Cf. Muller v. Nebraska Methodist Hospital, supra. Therefore, Concordia Teachers College is immune from liability in tort to plaintiff under the facts here while he was housed in the dormitory, in light of the law supra as declared by the Supreme Court of Nebraska.

■ The above six instances cited by plaintiff which he asserts to be proof from which the individual defendants could or should have foreseen that the conduct of Hahn was a source of danger and that their failure to control Hahn's conduct was a proximate cause of the injury sustained by him, are not reasonable inferences to be gleaned from the record before us. As to (1) and (2) thereof, no facts appear in the record from which a reasonable inference can be made that any one of the defendants knew or should have known that Hahn "constantly misused guns" or "frequently carried loaded guns on his person." As to (3), there was some evidence that guns were often displayed by Hahn to other students (but not before any of the defendants) and some guns were displayed hanging on the wall of Hahn's room and other student rooms in the dormitory. The rooms in the dormitory were regularly inspected by one or two individual students who lived on the floor, for dirt, whether the beds were made, etc. Counsellor Hansen also came around to the rooms. As to plaintiff's assertion (4),

there was testimony to the effect that Hahn and other boys in the dormitory occasionally shot off blank ammunition and firecrackers in and around the dormitory during the 1957–1958 school year. (Presumably Counsellor Hansen had some knowledge of that fact, because he called a meeting in the dormitory with respect to such incidents about three days prior to appellant's injury.) Only President Zimmerman had knowledge of the facts which appellant relates in (5) and (6) supra, referred to in the record as the "Sloup incident" and Zimmerman's knowledge was only as to part of these facts. The County Attorney did discuss that incident with Dean Griesse and both regarded the same as a minor incident of "disturbing the peace." (The County Attorney prosecuted Hahn on such a charge.) Dean Griesse told President Zimmerman about that affair and Zimmerman immediately took disciplinary action against Hahn as a consequence of that occurrence. In stating the above six incidents which plaintiff says are reasonable inferences to be made from the evidence, it is manifest that he has added isolated facts appearing in the record and has undertaken to assign the *totality* thereof as knowable facts to each of the *individual* defendants. It can be categorically stated that the individual defendant Trustees had no knowledge of *any* facts that would lead them to any such conclusion. They had no duty to make any individual investigation to be so informed. The record reveals that any knowledge gleaned by the Trustees as to day-to-day conditions existing at the College only came to them from reports made by those charged with the administration of the College. The record does not even establish that President Zimmerman or Counsellor Hansen had or could have had knowledge of *all* the facts inferred by plaintiff to form such conclusions.

■■ However, it is plaintiff's contention that the District Court erred in failing to take into account the element of "foreseeability", proof of which he contends was made, to sustain the query propounded in the six (6) questions supra;

and, in ruling that the negligence of the defendants Zimmerman and Hansen respecting such matter was not the proximate cause of the plaintiff's injuries. We shall not follow plaintiff in all the ramifications he presents concerning that matter. It is sufficient to say that the evidence adduced by plaintiff did not establish any positive act of misfeasance on the part of any of the individual defendants toward the plaintiff. The most that was revealed is that a condition was shown to exist in the dormitory in question which plaintiff catalogues as dangerous, which plaintiff attributes to the individual defendants because they did not take action to abate it, in performance of duties which the College engaged them to perform. It therefore appears that the only ground on which plaintiff claims the individual defendants could be liable to him in this case would be for nonfeasance; that is, for their failure as officers (Trustees, President, and Counsellor) to furnish a reasonably safe housing place for plaintiff while he was a student at the College, and to see that the duty of the College to use reasonable care not to affirmatively cause injury to plaintiff was performed. As said by the Supreme Court of Nebraska, in Wilson v. Thayer County Agricultural Society, et al., 115 Neb. 579, 213 N.W. 966, loc. cit. 970, 52 A.L.R. 1393 (1927):

> "We do not understand that to be the rule of law (to be) applied to (the individual) defendants in their situation. The (College) was, the principal. These (individual) defendant officers were its agents charged as such with the execution, in the scope of their employment, of such duties as belonged to their principal." (Par. added)

The liability considered by the Supreme Court of Nebraska in the Wilson case was in relation to facts that were on "all fours" with those in this case. The effect of the ruling therein made is that a principal alone is liable to third persons for misfeasance, negligence, and omission of duty of its agents, and the agent is also liable to third persons for his own misfeasances and positive wrongs. But the agent is not ordinarily liable to third persons for his own nonfeasance or omission of duty in the course of his employment. In the light of that generally acknowledged rule of law, it is apparent from the facts here that any failure on the part of the individual defendants to act in response to what the plaintiff claims should have been foreseen by them, did nothing more than to create a condition in the dormitory in question. That condition, if it existed, was not shown to be the result of any affirmative, positive action on the part of the individual defendants. Fortifying authority is not essential to sustain the proposition that the College, which exercised dominion of ownership over the dormitory, had the non-delegable duty to provide plaintiff with a safe place for lodging. The individual defendants had no such duty. Hence Hahn's conduct and act of shooting plaintiff could not be concurrent with any negligent failure of the individual defendants to take action respecting "foreseeable acts" which plaintiff claims made the dormitory an unsafe place for him to lodge in. That condition, if it existed, was prior to the occurrence of which the plaintiff complains. It did not induce Hahn to come into it intoxicated and thereafter perpetrate the act of injury to plaintiff. Therefore, the existence of the condition of which plaintiff complains was not the proximate cause of Hahn's conduct that injured the plaintiff. Cf. Jarosh v. Van Meter, 171 Neb. 61, 105 N.W. 2d 531 (1960); Kroeger v. Safranek, 161 Neb. 182, 72 N.W.2d 831 (1955); Frerichs v. Eastern Nebraska Public Power Dist., et al., 154 Neb. 777, 49 N.W.2d 619 (1951).

As to plaintiff's claim for breach of contract: it is founded in the proposition that the "College Catalogue" and "Student Handbook" of Concordia Teachers College sets forth "standard(s) of personal conduct" for students, and it was provided therein that such standards are "to be looked upon as a contract with Concordia as far as student life and con-

duct on the campus (is) concerned." As stated in his brief:

"It is the contention of the plaintiff that one of the implied provisions of the lodging contract was that the defendant college would provide for adequate control of the conduct of others living in the dormitory and would provide for general enforcement of the rules set out in the College Catalogue and Student Handbook, all for the general welfare and safety of persons living in the dormitory. Plaintiff likewise maintain(s) that a provision of the contract was that a skilled, competent supervisor would be placed in charge of such dormitory."

Be that as it may, the Supreme Court of Nebraska said in Duncan v. Nebraska Sanitarium & Benevolent Association, 92 Neb. 162, 137 N.W. 1120, 1121, 41 L.R.A., N.S., 973 (1912), regarding the rule of immunity here considered: "We see (no) reason why there should be any difference in the rule where the tortious act which caused (injury) is alleged to be a breach of an express contract than where it is alleged to be an implied contract, or where no contractual relation at all existed." (Par. added) Accord, Muller v. Nebraska Methodist Hospital, supra.

In light of plaintiff's theory of claim and proof adduced as above stated, which is all he offers to establish breach of contract, we may perfunctorily dispose of this claim for damages as the District Court did. Paraphrasing what Judge Van Pelt (the experienced, learned and erudite Judge who presided at the trial of this case) said in respect thereto, such claim is nothing more than "an attempt to make (a) case sound in contract rather than in tort (and) is merely an attempt (on the part of plaintiff) to circumvent the doctrine of immunity" which the College in this case is entitled to assert in protection of its endowments which it holds in trust for charitable and educational purposes. That the plaintiff cannot recover damages from the College for breach of contract under the facts established by him in this case is clear under Nebraska law.

■ We are mindful of the rule, that a party against whom the trial court has directed a verdict is entitled to have every controverted fact resolved in his favor and that he is entitled to the benefit of every inference reasonably arising from the evidence, as that rule is laid down and considered by this Court in Continental Can Co. v. Horton, 8 Cir., 250 F.2d 637 (1957). But that does not mean a verdict may not be directed where some facts are in dispute, which of necessity must be considered by a court when a motion under Rule 50, F.R.Civ.P. is presented to it.

"* * * Where both the facts and the inferences to be drawn therefrom (are) supported by the overwhelming weight of the evidence, and point so strongly in favor of one party or the other (so) that the court feels reasonable men could not possibly come to a contrary conclusion (a directed verdict is proper)." 5 Moore's Federal Practice, p. 2314. (Par. added.)

Cf. North Penn. R. R. v. Commercial Bank, 123 U.S. 727, 8 S.Ct. 266, 31 L.Ed. 287 (1887); Delaware L. & W. R. Co. v. Converse, 139 U.S. 469, 11 S.Ct. 569, 35 L.Ed. 213 (1891); Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720 (1929).

"In other words, where the evidence is such that without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict (the) court should determine the proceeding by non-suit, directed verdict or judgment n.o.v." 5 Moore's Federal Practice, p. 2315 and cases there cited.

The evidence adduced before the District Court in the case at bar is of the above nature.

■ The judgment appealed from is based upon the considered views of a Nebraska federal judge with respect to a question of Nebraska law. This Court has consistently refused to "attempt to outpredict, outforecast or outguess a trial

judge with respect to a doubtful question of the law of his State." Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733. We think that Judge Van Pelt neither misconceived nor misapplied Nebraska law in reaching his conclusion in this case.

The judgment appealed from is affirmed.